# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and | ) |
| | ) |
| STATE OF FLORIDA, OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS, | ) ) ) |
| | ) |
| Plaintiffs, | ) Civil No. 6:14-CV-8-ORL-28DAB |
| | ) |
| v. | ) |
| | ) |
| WORLDWIDE INFO SERVICES, INC., a Florida corporation, also d/b/a THE CREDIT VOICE; | ) ) ) |
| | ) |
| ELITE INFORMATION SOLUTIONS INC., a Florida corporation, also d/b/a THE CREDIT VOICE; | ) ) ) |
| | ) |
| ABSOLUTE SOLUTIONS GROUP INC., a Florida corporation, also d/b/a THE CREDIT VOICE; | ) ) ) |
| | ) |
| GLOBAL INTERACTIVE TECHNOLOGIES, INC., a Florida corporation, also d/b/a THE CREDIT VOICE INC.; | ) ) ) |
| | ) |
| GLOBAL SERVICE PROVIDERS, INC., a Florida corporation; | ) ) |
| | ) |
| THE CREDIT VOICE, INC., a Florida corporation, also d/b/a TCV; | ) ) |
| | ) |
| LIVE AGENT RESPONSE 1 LLC, a Florida limited liability company, also d/b/a LAR; | ) ) |
| | ) |
| ARCAGEN, INC., a Florida corporation, also d/b/a ARI; | ) ) |
| | ) |

AMERICAN INNOVATIVE CONCEPTS, INC., )
a Florida corporation; )
 )
UNIQUE INFORMATION SERVICES INC., a )
Florida corporation; )
 )
MICHAEL HILGAR, individually )
and as an officer or manager of Worldwide Info )
Services, Inc., Elite Information Solutions Inc., )
Absolute Solutions Group Inc., Global Interactive )
Technologies, Inc., Global Service Providers, Inc., )
The Credit Voice, Inc., Live Agent Response )
1 LLC, Arcagen, Inc., and American Innovative )
Concepts, Inc.; )
 )
GARY MARTIN, individually and as an officer or )
manager of Global Interactive Technologies, Inc., )
The Credit Voice, Live Agent Response 1 LLC, )
Arcagen, Inc., and American Innovative Concepts, )
Inc.; and )
 )
JOSEPH SETTECASE, individually and as an )
officer or manager of Unique Information Services )
Inc., )
 )
   Defendants. )
_____ )

## PRELIMINARY INJUNCTION WITH ASSET FREEZE, APPOINTMENT OF A RECEIVER, AND OTHER EQUITABLE RELIEF AS TO DEFENDANT LIVE AGENT RESPONSE 1 LLC

Plaintiffs, Federal Trade Commission ("Commission" or "FTC") and the State of

Florida, filed their Complaint for Permanent Injunction and Other Equitable Relief

("Complaint") in this matter, pursuant to Sections 13(b) and 19 of the Federal Trade

Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, the Telemarketing and Consumer

Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, and the

Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Chapter 501, Part II, Florida

Statutes (2012).  Plaintiffs also moved for an *ex parte* Temporary Restraining Order with Asset Freeze, Appointment of a Receiver, Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("TRO") pursuant to Rule 65 of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 65, which the Court granted on January 7, 2014.

This Court, having considered the pleadings, memoranda, declarations, and other exhibits filed herein, and being fully advised in the premises, finds that:

1. This Court has jurisdiction over the subject matter of this case, and over Defendant Live Agent Response 1 LLC ("LAR").

2. Venue properly lies with this Court.

3. There is good cause to believe that LAR has engaged in, and is likely to engage in the future in, acts and practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a); various provisions of the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310; and Section 501.204 of the FDUTPA, Chapter 501, Part II, Florida Statutes, and that Plaintiffs are therefore likely to prevail on the merits of this action.

4. There is good cause to believe that immediate and irreparable harm to the Court's ability to grant effective final relief for consumers in the form of monetary restitution will occur from the sale, transfer, or other disposition or concealment by LAR of its assets or corporate records unless LAR is immediately restrained and enjoined by Order of this Court. There is thus good cause for an asset freeze and the appointment of a permanent receiver over LAR.

5. There is good cause for issuing this Order pursuant to Federal Rule of Civil Procedure 65(b).

6.      Weighing the equities and considering Plaintiffs' likelihood of ultimate success, a preliminary injunction is in the public interest.

7.      No security is required of any agency of the United States for issuance of a preliminary injunction.  Fed. R. Civ. P. 65(c).  No bond is required with respect to relief requested pursuant to Section 60.08, Florida Statutes (2012).

## DEFINITIONS

For purposes of this Stipulated Preliminary Injunction ("Order"), the following definitions shall apply:

1.      "**Asset**" or "**Assets**" means any legal or equitable interest in, right to, or claim to, any real or personal property, including, but not limited to, "goods," "instruments," "equipment," "fixtures," "general intangibles," "inventory," "checks," or "notes," (as these terms are defined in the Uniform Commercial Code), lines of credit, chattels, leaseholds, contracts, mail or other deliveries, shares of stock, lists of consumer names, accounts, credits, premises, receivables, funds, and all cash, wherever located.

2.      "**Assisting Others**" includes, but is not limited to:  (1) providing administrative services, including, but not limited to, filing business registrations with federal, state, or local government entities, establishing bank or merchant accounts, and/or handling banking transactions; (2) acting as an officer, director, or registered agent of a business entity; (3) establishing mail accounts or mail receiving boxes, and/or providing mailing or printing services; (4) performing customer service functions, including, but not limited to, forwarding mail received from consumers and/or receiving or responding to consumer complaints; (5) formulating or providing, or arranging for the formulation or

4

provision of, any sales script or other marketing material; (6) providing names of, or assisting in the generation of, potential customers; and (7) performing or providing marketing or billing services of any kind, including, but not limited to, performing or providing telemarketing services.

3.      "**Individual Defendants**" means Michael Hilgar, Gary Martin, and Joseph Settecase, and by whatever other names each may be known.

4.      "**Corporate Defendants**" means Worldwide Info Services, Inc., Elite Information Solutions Inc., Absolute Solutions Group Inc., Global Interactive Technologies, Inc., Global Service Providers, Inc., The Credit Voice, Inc., Live Agent Response 1 LLC, Arcagen, Inc., American Innovative Concepts, Inc., and Unique Information Services Inc., and their successors and assigns, as well as any subsidiaries, and any fictitious business entities or business names created or used by these entities, or any of them.

5.      "**Defendants**" means all of the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination.

6.      "**Document**" or "**Documents**" means any materials listed in Federal Rule of Civil Procedure 34(a), Fed. R. Civ. P. 34(a), and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

7.      "**Financial Institution**" means any bank, savings and loan institution, credit union, or any financial depository of any kind, including, but not limited to, any brokerage

house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer.

8.      "**National Do Not Call Registry**" means the National Do Not Call Registry, which is the "do-not-call" registry maintained by the Federal Trade Commission pursuant to 16 C.F.R. § 310.4(b)(1)(iii)(B).

9.      "**Person**" means a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

10.      "**Plaintiffs**" means the Federal Trade Commission ("FTC" or "Commission") and the State of Florida.

11.      "**Telemarketer**" means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor.  16 C.F.R. § 310.2(bb).

12.      "**Telemarketing**" means any plan, program, or campaign (whether or not covered by the TSR, 16 C.F.R. Part 310) that is conducted to induce the purchase of goods or services or a charitable contribution by use of one or more telephones.

## I.

## PROHIBITED BUSINESS ACTIVITIES

**IT IS THEREFORE ORDERED** that LAR, and its officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, in connection with the telemarketing, advertising, marketing, promoting, offering for sale, sale,

or provision of any good or service, including, but not limited to, any medical alert system, are hereby restrained and enjoined from:

   A.  Misrepresenting, or assisting others in misrepresenting, directly or indirectly, expressly or by implication, any material fact, including, but not limited to:

   1.  That Defendants' medical alert system has already been purchased for the consumer by a friend, family member, or other acquaintance;

   2.  That Defendants' medical alert system is endorsed by the American Heart Association, the American Diabetes Association, and/or the National Institute on Aging; and

   3.  That consumers will not be charged the first monitoring fee until they have received and activated the medical alert system.

   B.  Violating, or assisting others in violating, any provision of the TSR, 16 C.F.R. Part 310, including, but not limited to:

   1.  Section 310.3(a)(2)(vii) of the TSR, 16 C.F.R. § 310.3(a)(2)(vii), by misrepresenting, directly or by implication, that Defendants' medical alert system is endorsed by the American Heart Association, the American Diabetes Association, and/or the National Institute on Aging;

   2.  Section 310.3(a)(4) of the TSR, 16 C.F.R. § 310.3(a)(4), by misrepresenting, directly or by implication, that:

    (a) Defendants' medical alert system has already been purchased for the consumer by a friend, family member, or other acquaintance; and

(b) consumers will not be charged the first monitoring fee until they have received and activated the medical alert system;

3.    Section 310.4(b)(1)(iii)(B) of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B), by initiating, or causing others to engage in initiating, an outbound telephone call to a person when that person's telephone number is on the National Do Not Call Registry;

4.    Section 310.4(b)(1)(iii)(A) of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(A), by initiating, or causing others to engage in initiating, an outbound telephone call to a person who previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered;

5.    Section 310.4(a)(8) of the TSR, 16 C.F.R. § 310.4(a)(8), by failing to transmit, or cause to be transmitted, the telephone number and name of the telemarketer or of the seller to any caller identification service in use by a recipient of a telemarketing call;

6.    Section 310.4(b)(1)(v)(A) of the TSR, 16 C.F.R. § 310.4(b)(1)(v)(A), by making, or causing others to make, outbound telephone calls that delivered prerecorded messages to induce the purchase of goods or services when the persons to whom these telephone calls were made had not signed an express agreement, in writing, authorizing the seller to place prerecorded calls to such person; and

7.    Sections 310.4(b)(1)(v)(B)(ii) and (d) of the TSR, 16 C.F.R. §§ 310.4(b)(1)(v)(B)(ii) and (d), by making, or causing others to make, outbound telephone calls that deliver a prerecorded message in which the telemarketer or message failed to disclose truthfully, promptly and in a clear and conspicuous manner the identity of the seller, that the purpose of the call is to sell goods or services, and the nature of the goods or services.

8

## II.

## ASSET FREEZE

**IT IS FURTHER ORDERED** that LAR, and its officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, except as provided herein, as stipulated by the parties, or as directed by further order of the Court, are hereby restrained and enjoined from:

A.      Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any funds, real or personal property, accounts, contracts, shares of stock, lists of consumer names, or other assets, or any interest therein, wherever located, including outside the territorial United States, that are:

1.      Owned, controlled, or held by, in whole or in part, for the benefit of, or subject to access by, or belonging to, any Defendant;

2.      In the actual or constructive possession of any Defendant; or

3.      In the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, or belonging to, any other corporation, partnership, trust, or any other entity directly or indirectly owned, managed, or controlled by, or under common control with, any Defendant, including, but not limited to, any assets held by or for any Defendant in any account at any bank or savings and loan institution, or with any credit card processing agent, automated clearing house processor, network transaction processor, bank

9

debit processing agent, customer service agent, commercial mail receiving agency, or mail holding or forwarding company, or any credit union, retirement fund custodian, money market or mutual fund, storage company, trustee, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, or other financial institution or depository of any kind, either within or outside the territorial United States;

B.     Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of any Defendant, or subject to access by any Defendant or under any Defendant's control, without providing Plaintiffs prior notice and an opportunity to inspect the contents in order to determine that they contain no assets covered by this Section;

C.     Cashing any checks or depositing or processing any payments from customers of Defendants;

D.     Incurring charges or cash advances on any credit card issued in the name, singly or jointly, of any Defendant; or

E.     Incurring liens or encumbrances on real property, personal property, or other assets in the name, singly or jointly, of any Defendant or of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant.

The funds, property, and assets affected by this Section shall include both existing assets and assets acquired after the effective date of this Order.

## III.

## DUTIES OF THIRD PARTIES HOLDING LAR'S ASSETS

**IT IS FURTHER ORDERED** that any financial institution, business entity, or person maintaining or having custody or control of any account or other asset of LAR, or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by, or under common control with LAR, which is served with a copy of this Order, or otherwise has actual or constructive knowledge of this Order, shall:

A.      Hold and retain within its control and prohibit the withdrawal, removal, assignment, transfer, pledge, hypothecation, encumbrance, disbursement, dissipation, conversion, sale, liquidation, or other disposal of any of the assets, funds, documents, or other property held by, or under its control:

1.      On behalf of, or for the benefit of, LAR or any other party subject to Section II above;

2.      In any account maintained in the name of, or for the benefit of, or subject to withdrawal by, LAR or other party subject to Section II above; and

3.      That are subject to access or use by, or under the signatory power of, LAR or other party subject to Section II above;

B.      Deny LAR access to any safe deposit boxes or storage facilities that are either:

1.      Titled in the name, individually or jointly, of any Defendant, or other party subject to Section II above; or

2.      Subject to access by any Defendant or other party subject to Section II above;

11

C.     Provide Plaintiffs, within five (5) days of the date of service of this Order, a sworn statement setting forth:

1.     The identification number of each account or asset titled in the name, individually or jointly, of LAR, or held on behalf of, or for the benefit of, LAR or other party subject to Section II above, including all trust accounts managed on behalf of LAR or subject to LAR's control;

2.     The balance of each such account, or a description of the nature and value of such asset;

3.     The identification and location of any safe deposit box, commercial mail box, or storage facility that is either titled in the name, individually or jointly, of LAR, or is otherwise subject to access or control by LAR or other party subject to Section II above, whether in whole or in part; and

4.     If the account, safe deposit box, storage facility, or other asset has been closed or removed, the date closed or removed and the balance on said date;

D.     Within five (5) days of a request from any Plaintiff, provide Plaintiffs with copies of all records or other documents pertaining to each such account or asset, including, but not limited to, originals or copies of account applications, account statements, corporate resolutions, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs; and

E.     This Section shall apply to existing accounts and assets, assets deposited or accounts opened after the effective date of this Order, and any accounts or assets maintained,

12

held or controlled three years prior to the effective date of this Order.  This Section shall not prohibit transfers in accordance with any provision of this Order, any further order of the Court, or by written agreement of the parties.

## IV.

## FINANCIAL STATEMENTS

**IT IS FURTHER ORDERED** that LAR shall serve upon counsel for Plaintiffs, no later than five (5) business days after entry of this Order, to the extent that LAR has not already done so pursuant to the TRO, a completed financial statement accurate as of the date of entry of the TRO, on the forms served on Defendants with the TRO for Individual Defendants and for Corporate Defendants, as the case may be, signed under penalty of perjury.

The financial statements shall include assets held outside the territory of the United States, shall be accurate as of the date of the entry of the TRO, and shall be verified under oath.  LAR shall attach to these completed financial statements copies of all local, state, provincial, and federal income and property tax returns, with attachments and schedules, as called for by the instructions to the financial statements.

## V.

## MAINTAIN RECORDS AND REPORT OF NEW BUSINESS ACTIVITY

**IT IS FURTHER ORDERED** that LAR, and its officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether

acting directly or through any trust, corporation, subsidiary, division, or other device, are hereby restrained and enjoined from:

A.      Failing to make and keep books, records, accounts, bank statements, current accountants' reports, general ledgers, general journals, cash receipts ledgers, cash disbursements ledgers and source documents, documents indicating title to real or personal property, and any other data which, in reasonable detail, accurately and fairly reflect the incomes, disbursements, transactions, dispositions, and uses of LAR's assets;

B.      Destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any documents, including electronically stored materials, that relate in any way to the business practices or business or personal finances of Defendants; to the business practices or finances of entities directly or indirectly under the control of Defendants; or to the business practices or finances of entities directly or indirectly under common control with any other Defendant; and

C.      Creating, operating, or exercising any control over any new business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship or corporation, without first providing Plaintiffs with a written statement disclosing: (1) the name of the business entity; (2) the address, telephone number, e-mail address, and website address of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities.

## VI.

### PROHIBITION ON DISCLOSING CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that LAR, and its officers, agents, servants, employees, attorneys, and all other persons or entities in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, are hereby restrained and enjoined from:

A.    Selling, renting, leasing, transferring, or otherwise disclosing the name, address, birth date, telephone number, e-mail address, Social Security number, credit card number, bank account number, or other financial or identifying personal information of any person from whom or about whom any Defendant obtained such information in connection with activities alleged in Plaintiffs' Complaint; and

B.    Benefitting from or using the name, address, birth date, telephone number, e-mail address, Social Security number, credit card number, bank account number, or other financial or identifying personal information of any person from whom or about whom any Defendant obtained such information in connection with activities alleged in Plaintiffs' Complaint;

*Provided, however,* that LAR may disclose such financial or identifying personal information to a law enforcement agency or as required by any law, regulation, or court order.

15

## VII.

### PERMANENT RECEIVER

#### A. APPOINTMENT OF PERMANENT RECEIVER

**IT IS FURTHER ORDERED** that Robb Evans & Associates LLC is appointed Permanent Equity Receiver ("Receiver") for LAR and any of its affiliates, subsidiaries, divisions, or sales or customer service operations, wherever located, with the full power of an equity receiver. The Receiver shall be the agent of this Court, and solely the agent of this Court, in acting as Receiver under this Order. The Receiver shall be accountable directly to this Court. The Receiver shall comply with all Local Rules of this Court governing receivers.

#### B. RECEIVERSHIP DUTIES

**IT IS FURTHER ORDERED** that the Receiver is directed and authorized to accomplish the following:

1. Assume full control of LAR by removing, as the Receiver deems necessary or advisable, any director, officer, employee, independent contractor, or agent of LAR, including any Individual Defendant, from control of, management of, or participation in, the affairs of LAR;

2. Take exclusive custody, control, and possession of all assets and documents of, or in the possession, custody, or under the control of, LAR, wherever situated. The Receiver shall have full power to divert mail and to sue for, collect, receive, take in possession, hold, and manage all assets and documents of LAR and other persons or entities whose interests are now held by or under the direction, possession, custody, or control of

16

LAR. Provided, however, that the Receiver shall not attempt to collect any amount from a consumer or to allow LAR to continue to debit or otherwise charge a consumer's account, if the Receiver believes the consumer was a victim of the unfair or deceptive acts or practices alleged in the Complaint in this matter;

    3.  Use any means necessary to take possession of and to secure all areas of the business premises of LAR. Such steps may include, but are not limited to, the following as the Receiver deems necessary or advisable: (a) serving this Order; (b) completing a written inventory of all receivership assets; (c) obtaining pertinent information from all employees and other agents of LAR, including, but not limited to, the name, home address, Social Security number, job description, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent; (d) videotaping all portions of the locations; (e) securing the locations by changing the locks and disconnecting any computer modems or other means of access to the computer or other records maintained at the locations; (f) requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Receiver with proof of identification, or to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises documents or assets of LAR; and/or (g) employ the assistance of law enforcement officers as the Receiver deems necessary to implement the provisions of this Order;

    4.  Conserve, hold, and manage all receivership assets, and perform all acts necessary or advisable to preserve the value of those assets, in order to prevent any irreparable loss, damage, or injury to consumers or to creditors of LAR, including, but not

limited to, obtaining an accounting of the assets and preventing transfer, withdrawal, or

misapplication of assets, and including the authority to liquidate or close out any open

securities or commodity futures positions of LAR;

      5.      Enter into contracts and purchase insurance as advisable or necessary;

      6.      Prevent the inequitable distribution of assets and determine, adjust,

and protect the interests of consumers and creditors who have transacted business with LAR;

      7.      Manage and administer the business of LAR until further order of this

Court by performing all incidental acts that the Receiver deems to be advisable or necessary,

which includes retaining, hiring, or dismissing any employees, independent contractors, or

agents;

      8.      Choose, engage, and employ attorneys, accountants, appraisers, and

other independent contractors and technical specialists, as the Receiver deems advisable or

necessary in the performance of duties and responsibilities under the authority granted by this

Order;

      9.      Make payments and disbursements from the receivership estate that

are necessary or advisable for carrying out the directions of, or exercising the authority

granted by, this Order. The Receiver shall apply to the Court for prior approval of any

payment of any debt or obligation incurred by LAR prior to the date of entry of this Order,

except payments that the Receiver deems necessary or advisable to secure assets of LAR,

such as rental payments;

      10.     Determine and implement the manner in which LAR will comply with,

and prevent violations of, this Order and all other applicable laws;

18

11.   Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal or foreign courts that the Receiver deems necessary and advisable to preserve or recover the assets of LAR or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

12.   Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in his or her role as Receiver, or against LAR that the Receiver deems necessary and advisable to preserve the assets of LAR or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

13.   Continue and conduct the business of LAR in such manner, to such extent, and for such duration as the Receiver may in good faith deem to be necessary or appropriate to operate the business profitably and lawfully, if at all; provided, however, that the continuation and conduct of the business shall be conditioned upon the Receiver's good faith determination that the business can be lawfully operated at a profit using the assets of the receivership estate;

14.   Issue subpoenas to obtain documents and records pertaining to the receivership, and conduct discovery in this action on behalf of the receivership estate;

15.   Open one or more bank accounts as designated depositories for funds of LAR. The Receiver shall deposit all funds of LAR in such a designated account and shall make all payments and disbursements from the receivership estate from such an account;

16.   Maintain accurate records of all receipts and expenditures that he or she makes as Receiver;

17.     Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency, including Plaintiffs; and

18.     File reports with the Court on a timely and reasonable basis.

## C. COOPERATION WITH THE RECEIVER

**IT IS FURTHER ORDERED** that:

1.     LAR and its officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, shall fully cooperate with and assist the Receiver.  This cooperation and assistance shall include, but not be limited to:

a.     Providing any information to the Receiver that the Receiver deems necessary to exercising the authority and discharging the responsibilities of the Receiver under this Order;

b.     Providing any password required to access any computer, electronic file, or telephonic data in any medium; or

c.     Advising all persons who owe money to LAR that all debts should be paid directly to the Receiver.

2.     Defendants and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, are hereby restrained and enjoined from directly or indirectly:

20

a.  Transacting any of the business of LAR;

b.  Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any documents of LAR, including, but not limited to, books, records, accounts, writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations, electronically-stored records, or any other records of any kind or nature;

c.  Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, LAR, or the Receiver;

d.  Excusing debts owed to LAR;

e.  Failing to notify the Receiver of any asset, including accounts, of LAR held in any name other than the name of LAR, or by any person or entity other than LAR, or failing to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of such assets;

f.  Doing any act or refraining from any act whatsoever to interfere with the Receiver's taking custody, control, possession, or managing of the assets or documents subject to this receivership; or to harass or interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of LAR; or to refuse to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any Order of this Court; or

g.      Filing, or causing to be filed, any petition on behalf of LAR for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., without prior permission from this Court.

**D. DELIVERY OF RECEIVERSHIP PROPERTY**

**IT IS FURTHER ORDERED** that:

1.      Immediately upon entry of this Order, or within such period as may be permitted by the Receiver, Defendants or any other person or entity shall transfer or deliver possession, custody, and control of the following to the Receiver:

a.      All assets of LAR, including assets subject to repatriation pursuant to Section VIII, *infra*;

b.      All documents of LAR, including, but not limited to, books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title documents and other papers;

c.      All assets belonging to members of the public now held by LAR; and

d.      All keys, codes, and passwords necessary to gain or to secure access to any assets or documents of LAR, including, but not limited to, access to their business premises, means of communication, accounts, computer systems, mail boxes, or other property.

2.     In the event any person or entity fails to deliver or transfer any receivership asset or document or otherwise fails to comply with any provision of this Section, the Receiver may file *ex parte* an Affidavit of Non-Compliance regarding the failure.  Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Receiver.  The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county, or any other federal or state law enforcement officer, to seize the asset, document, or other thing and to deliver it to the Receiver.

### E.  TRANSFER OF FUNDS TO THE RECEIVER

**IT IS FURTHER ORDERED** that, upon service of a copy of this Order, all financial institutions, finance companies, commercial lending companies, credit card processing agents or agents providing electronic funds transfer services or automated clearing house processing, brokerage houses, escrow agents, money market or mutual funds, title companies, commodity futures merchants, commodity trading companies, precious metal dealers, trustees, or other financial institutions or depositories of any kind, shall cooperate with all reasonable requests of the Receiver relating to implementation of this Order, including transferring funds at his or her direction and producing records related to the assets of LAR.

### F.  STAY OF ACTIONS

**IT IS FURTHER ORDERED** that:

1.     Except by leave of this Court, during pendency of the receivership ordered herein, Defendants and all other persons and entities be and hereby are stayed from

23

taking any action to establish or enforce any claim, right, or interest for, against, on behalf of, in, or in the name of, LAR, any of its subsidiaries, affiliates, partnerships, assets, documents, or the Receiver or the Receiver's duly authorized agents acting in their capacities as such, including, but not limited to, the following actions:

        a.      Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations;

        b.      Accelerating the due date of any obligation or claimed obligation; filing, perfecting or enforcing any lien; taking or attempting to take possession, custody, or control of any asset; attempting to foreclose, forfeit, alter, or terminate any interest in any asset, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise, or setoff of any debt owing to LAR that arose before the date of this Order against any claim against LAR;

        c.      Executing, issuing, serving, or causing the execution, issuance or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process whether specified in this Order or not; or

        d.      Doing any act or thing whatsoever to interfere with the Receiver taking custody, control, possession, or management of the assets or documents subject to this receivership, or to harass or interfere with the Receiver in any way, or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of LAR.

2.    This Order does not stay:

a.    The commencement or continuation of a criminal action or proceeding;

b.    The commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or

c.    The enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

3.    Except as otherwise provided in this Order, all persons and entities in need of documentation from the Receiver shall in all instances first attempt to secure such information by submitting a formal written request to the Receiver, and, if such request has not been responded to within thirty (30) days of receipt by the Receiver, any such person or entity may thereafter seek an Order of this Court with regard to the relief requested.

### G.  COMPENSATION OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by, or in the possession or control of, or which may be received by LAR. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of

this Order.  The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

### H. RECEIVER'S BOND

The Receiver will not be required to file a bond.

## VIII.

## REPATRIATION OF ASSETS AND DOCUMENTS

**IT IS FURTHER ORDERED** that LAR shall:

A.      Unless previously completed in full compliance with the TRO, within three (3) business days following entry of this Order, take such steps as are necessary to repatriate to the territory of the United States of America all documents and assets that are located outside such territory and are held by or for LAR or are under LAR's direct or indirect control, jointly, severally, or individually;

B.      Unless previously completed in full compliance with the TRO, within three (3) business days following entry of this Order, provide Plaintiffs with a full accounting of all documents and assets that are located outside of the territory of the United States of America or that have been transferred to the territory of the United States of America pursuant to Subsection A above and are held by or for LAR or are under LAR's direct or indirect control, jointly, severally, or individually, including the addresses and names of any foreign or domestic financial institution or other entity holding the documents and assets, along with the

account numbers and balances;

    C.      Hold and retain all such documents and assets and prevent any transfer, disposition, or dissipation whatsoever of any such documents or assets; and

    D.      Unless previously completed in full compliance with the TRO, within three (3) business days following entry of this Order, provide Plaintiffs access to LAR's records and documents held by financial institutions or other entities outside the territory of the United States of America, by signing and delivering to Plaintiffs' counsel the Consent to Release of Financial Records attached to this Order as Attachment A.

## IX.

## INTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that Defendants are hereby restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by the preceding Section VIII of this Order, including, but not limited to:

    A.      Sending any statement, letter, facsimile, e-mail or wire transmission, or telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement, until such time that assets have been fully repatriated pursuant to the preceding Section of this Order; and

    B.      Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a Court Order, until such time as assets have been fully repatriated pursuant to

the preceding Section of this Order.

## X.

### EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that pursuant to Federal Rules of Civil Procedure 30(a), 31(a), 34, and 45, and notwithstanding the provisions of Federal Rules of Civil Procedure 26(d) and (f), 30(a)(2)(A), and 31(a)(2)(A), the parties are granted leave, at any time after entry of this Order to:

A.      Take the deposition of any person, whether or not a party, for the purpose of discovering the nature, location, status, and extent of the assets of LAR, and LAR's affiliates and subsidiaries; the nature and location of documents reflecting the business transactions of LAR, and LAR's affiliates and subsidiaries; the location of any premises where LAR, directly or through any third party, conduct business operations; LAR's whereabouts; and/or the applicability of any evidentiary privileges to this action; and

B.      Demand the production of documents from any person, whether or not a party, relating to the nature, status, and extent of the assets of LAR, and LAR's affiliates and subsidiaries; the nature and location of documents reflecting the business transactions of LAR, and LAR's affiliates and subsidiaries; the location of any premises where LAR, directly or through any third party, conduct business operations; LAR's whereabouts; and/or the applicability of any evidentiary privileges to this action.

Three (3) days notice shall be deemed sufficient for any such deposition, five (5) days notice shall be deemed sufficient for the production of any such documents, and twenty-four (24) hours notice shall be deemed sufficient for the production of any such documents that

28

are maintained or stored only as electronic data. The provisions of this Section shall apply both to parties to this case and to non-parties. The limitations and conditions set forth in Federal Rules of Civil Procedure 30(a)(2)(A)(ii) and 31(a)(2)(A)(ii) regarding subsequent depositions of an individual shall not apply to depositions taken pursuant to this Section. Any such depositions taken pursuant to this Section shall not be counted toward any limit on the number of depositions under the Federal Rules of Civil Procedure, including those set forth in Federal Rules of Civil Procedure 30(a)(2)(A) and 31(a)(2)(A). Service of discovery upon a party, taken pursuant to this Section, shall be sufficient if made through the means described in Section XII of this Order.

## XI.

## DISTRIBUTION OF ORDER BY LAR

**IT IS FURTHER ORDERED** that LAR shall immediately provide a copy of this Order to each of its corporations, subsidiaries, affiliates, partners, divisions, sales entities, successors, assigns, members, officers, directors, employees, independent contractors, agents, servants, attorneys, spouses, representatives, and any other persons in active concert or participation with them. Within five (5) calendar days following entry of this Order, LAR shall file with this Court and serve on Plaintiffs an affidavit identifying the name, title, addresses, telephone numbers, date of service, and manner of service of the persons and entities LAR has served with a copy of this Order in compliance with this provision.

## XII.

### SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that copies of this Order may be distributed by United States First Class Mail, overnight delivery, facsimile, electronic mail, or personally, by agents or employees of Plaintiffs, by agents or employees of the Receiver, by any law enforcement agency, or by private process server, upon any person, financial institution, or other entity that may have possession or control of any property, property right, document, or asset of any Defendant, or that may be subject to any provision of this Order.  Service upon any branch or office of any financial institution or entity shall effect service upon the entire financial institution or entity.

## XIII.

### CONSUMER REPORTING AGENCIES

**IT IS FURTHER ORDERED** that, pursuant to Section 604 of the Fair Credit Reporting Act, 15 U.S.C. § 1681b, any consumer reporting agency may furnish a consumer or credit report concerning LAR to Plaintiffs.

## XIV.

### CORRESPONDENCE WITH AND NOTICE TO PLAINTIFFS

**IT IS FURTHER ORDERED** that for purposes of this Order, all correspondence and pleadings to the Federal Trade Commission shall be addressed to:

> David A. O'Toole
> Marissa J. Reich
> Federal Trade Commission
> 55 West Monroe Street, Suite 1825
> Chicago, Illinois 60603
> (312) 960-5634 [Telephone]

30

(312) 960-5600 [Facsimile]

All correspondence and pleadings to the State of Florida, Office of the Attorney General,

shall be addressed to:

> Denise Kim
> Assistant Attorney General
> Office of the Attorney General
> Consumer Protection Division
> 135 W. Central Boulevard, Suite 1000
> Orlando, Florida 32801
> (407) 245-0833 [Telephone]
> (407) 245-0365 [Facsimile]

## XV.

## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter

for all purposes.

**SO ORDERED**, this _17_ day of ___January___, 2014.

_____
The Honorable John Antoon, II
Middle District of Florida