**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

_____

|  |  |  |
|---|---|---|
| FEDERAL TRADE COMMISSION, and | ) | |
| | ) | |
| STATE OF FLORIDA, OFFICE OF THE | ) | |
| ATTORNEY GENERAL, DEPARTMENT OF | ) | |
| LEGAL AFFAIRS, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 6:14-CV-8-ORL 28DAB |
| | ) | |
| v. | ) | |
| | ) | |
| WORLDWIDE INFO SERVICES, INC., a | ) | |
| Florida corporation, also d/b/a THE CREDIT | ) | |
| VOICE; | ) | |
| | ) | |
| ELITE INFORMATION SOLUTIONS INC., | ) | |
| a Florida corporation, also d/b/a THE CREDIT | ) | |
| VOICE; | ) | |
| | ) | |
| ABSOLUTE SOLUTIONS GROUP INC., | ) | |
| a Florida corporation, also d/b/a THE CREDIT | ) | |
| VOICE; | ) | |
| | ) | |
| GLOBAL INTERACTIVE TECHNOLOGIES, | ) | |
| INC., a Florida corporation, also d/b/a THE | ) | |
| CREDIT VOICE INC.; | ) | |
| | ) | |
| GLOBAL SERVICE PROVIDERS, INC., a | ) | |
| Florida corporation; | ) | |
| | ) | |
| THE CREDIT VOICE, INC., a Florida | ) | |
| corporation, also d/b/a TCV; | ) | |
| | ) | |
| LIVE AGENT RESPONSE 1 LLC, a Florida | ) | |
| limited liability company, also d/b/a LAR; | ) | |
| | ) | |
| ARCAGEN, INC., a Florida corporation, also | ) | |
| d/b/a ARI; | ) | |
| | ) | |
| AMERICAN INNOVATIVE CONCEPTS, INC., | ) | |
| a Florida corporation; | ) | |
| | ) | |

UNIQUE INFORMATION SERVICES INC., a )
Florida corporation;                      )
                                          )
NATIONAL LIFE NETWORK INC., a Florida     )
corporation;                              )
                                          )
MICHAEL HILGAR, individually              )
and as an officer or manager of Worldwide Info )
Services, Inc., Elite Information Solutions Inc., )
Absolute Solutions Group Inc., Global Interactive )
Technologies, Inc., Global Service Providers, Inc., )
The Credit Voice, Inc., Live Agent Response )
1 LLC, Arcagen, Inc., American Innovative )
Concepts, Inc., Unique Information Services, Inc., )
and National Life Network Inc.;           )
                                          )
GARY MARTIN, individually and as an officer or )
manager of Global Interactive Technologies, Inc., )
The Credit Voice, Live Agent Response 1 LLC, )
Arcagen, Inc., American Innovative Concepts, )
Inc., Unique Information Services, Inc., and )
National Life Network Inc.               )
                                          )
JOSEPH SETTECASE, individually and as an )
officer or manager of Unique Information Services )
Inc.; and                                 )
                                          )
YULUISA NIEVES, individually and as an officer )
or manager of American Innovative Concepts, Inc. )
and National Life Network Inc.;          )
                                          )
                        Defendants.       )
_____)

## FIRST AMENDED COMPLAINT FOR
## PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

Plaintiffs, the Federal Trade Commission ("FTC"), and the State of Florida, Office of the

Attorney General, Department of Legal Affairs ("State of Florida"), for their First Amended

Complaint allege:

1.      The FTC brings this action under Sections 13(b) and 19 of the Federal Trade

Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and

Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, to

obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of

contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other

equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15

U.S.C. § 45(a), and in violation of the FTC's Trade Regulation Rule entitled "Telemarketing

Sales Rule" ("TSR"), 16 C.F.R. Part 310.

2.      The State of Florida brings this action pursuant to the Telemarketing and

Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108 and

the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Chapter 501, Part II, Florida

Statutes (2012), to obtain temporary and permanent injunctions, consumer restitution, civil

penalties and other equitable relief, and reimbursement of costs and attorneys' fees for

Defendants' acts or practices in violation of the TSR and FDUTPA.  The State of Florida has

conducted an investigation, and the head of the enforcing authority, Attorney General Pamela Jo

Bondi, has determined that an enforcement action serves the public interest as required by

FDUPTA Section 501.207, Florida Statutes (2012).

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a),

and 1345, and 15 U.S.C. §§ 45(a), 53(b), 57b, 6102(c), and 6105(b).

4.      This Court has supplemental jurisdiction over the State of Florida's claims

pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (2), (c)(1) and

(2), and (d),  and 15 U.S.C. § 53(b).

## PLAINTIFFS

6.      The FTC is an independent agency of the United States Government created by statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces the Telemarketing Act, 15 U.S.C. §§ 6101-6108.  Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices.

7.      The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the TSR and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.  15 U.S.C. §§ 53(b), 56(a)(2)(A), 56(a)(2)(B), 57b, 6102(c) and 6105(b).

8.      The State of Florida is the enforcing authority under FDUTPA pursuant to Florida Statutes Section 501.203(3) and is authorized to pursue this action to enjoin violations of the TSR, and in each such case, to obtain damages, restitution, and other compensation on behalf of Florida residents.  The State of Florida is authorized to pursue this action to enjoin violations of FDUTPA and to obtain legal, equitable or other appropriate relief including rescission or reformation of contracts, restitution, the appointment of a receiver, disgorgement of ill-gotten monies, or other relief as may be appropriate.  §501.207, Fla. Stat.

## DEFENDANTS

9.      Defendant Worldwide Info Services, Inc., also doing business as The Credit Voice, is a Florida corporation with its principal address at 478 E. Altamonte, #400, Altamonte

Springs, Florida.  Worldwide Info Services, Inc. transacts or has transacted business in this district and throughout the United States.

10.    Defendant Elite Information Solutions Inc., also doing business as The Credit Voice, is a Florida corporation with its principal address at 509 S. Chickasaw Trail, #393, Orlando, Florida.  Elite Information Solutions Inc. transacts or has transacted business in this district and throughout the United States.

11.    Defendant Absolute Solutions Group Inc., also doing business as The Credit Voice, is a Florida corporation with its principal address at 5703 Red Bug Lake Road, Winter Springs, Florida.  Absolute Solutions Group Inc. transacts or has transacted business in this district and throughout the United States.

12.    Defendant Global Interactive Technologies, Inc., also doing business as The Credit Voice Inc., is a Florida corporation with its principal address at 474 S. Northlake Boulevard, #1024, Altamonte Springs, Florida.  Global Interactive Technologies, Inc. transacts or has transacted business in this district and throughout the United States.

13.    Defendant Global Service Providers, Inc. is a Florida corporation with its principal address at 5415 Lake Howell Road, #142, Winter Park, Florida.  Global Service Providers, Inc. transacts or has transacted business in this district and throughout the United States.

14.    Defendant The Credit Voice, Inc., also doing business as TCV, is a Florida corporation with its principal address at 2673 Lakebreeze Lane N, Clearwater, Florida.  The Credit Voice, Inc. transacts or has transacted business in this district and throughout the United States.

15.     Defendant Live Agent Response 1 LLC, also doing business as LAR, is a Florida limited liability company with its principal address at 1106 South Powerline Road, Pompano Beach, Florida.  Live Agent Response 1 LLC transacts or has transacted business in this district and throughout the United States.

16.     Defendant Arcagen, Inc., also doing business as ARI, is a Florida corporation with its principal address at 474 S. Northlake Boulevard, #1024, Altamonte Springs, Florida. Arcagen, Inc. transacts or has transacted business in this district and throughout the United States.

17.     Defendant American Innovative Concepts, Inc. is a Florida corporation with its principal address at 127 W. Fairbanks Avenue, Winter Park, Florida.  American Innovative Concepts, Inc. transacts or has transacted business in this district and throughout the United States.

18.     Defendant Unique Information Services Inc. is a Florida corporation with its principal address at 1170 Tree Swallow Drive, #324, Winter Springs, Florida.  Unique Information Services Inc. transacts or has transacted business in this district and throughout the United States.

19.     Defendant National Life Network Inc. is a Florida corporation with its principal address at 7378 W. Atlantic Boulevard, Suite 315, Margate, Florida.  National Life Network Inc. transacts or has transacted business in this district and throughout the United States.

20.     Michael Hilgar is an owner, officer, director, member, or manager of Defendants Worldwide Info Services, Inc., Elite Information Solutions Inc., Absolute Solutions Group Inc., Global Interactive Technologies, Inc., Global Service Providers, Inc., The Credit Voice, Inc., Live Agent Response 1 LLC, Arcagen, Inc., American Innovative Concepts, Inc., Unique

Information Services Inc., and National Life Network Inc. (collectively, "Corporate Defendants"). At all times material to this First Amended Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this First Amended Complaint. Defendant Hilgar is responsible for organizing and creating several of the corporations, establishing and maintaining corporate bank accounts, applying for a telemarketing license on behalf of the enterprise, leasing one of the call centers used by Corporate Defendants' representatives, and setting up and paying for telephone numbers used in the scheme. Defendant Hilgar resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

21. Gary Martin is an owner, officer, director, member, or manager of Defendants Global Interactive Technologies, Inc., The Credit Voice, Inc., Live Agent Response 1 LLC, Arcagen, Inc., American Innovative Concepts, Inc., Unique Information Services Inc., and National Life Network Inc. At times material to this First Amended Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this First Amended Complaint. Among other things, Defendant Martin organized and created two of the corporations, established and maintains at least one corporate bank account, applied for a telemarketing license on behalf of the enterprise, supervises its representatives, and leases one of the call centers used by Corporate Defendants' representatives. Defendant Martin resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

7

22.     Joseph Settecase is an owner, officer, director, member, or manager of Defendant Unique Information Services Inc.  At all times material to this First Amended Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Unique Information Services, Inc. set forth in this First Amended Complaint.  Among other things, Defendant Settecase incorporated Unique Information Services Inc. and through that entity, operates an autodialing system that delivers prerecorded voice messages through telephone calls to consumers throughout the United States. In many instances, Unique Information Services and Settecase have delivered the prerecorded voice messages used to initiate Defendants' telemarketing calls.  Defendant Settecase resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

23.     Yuluisa Nieves is an owner, officer, director, member, or manager of Defendants American Innovative Concepts, Inc. and National Life Network Inc.   At all times material to this First Amended Complaint, acting alone or in concert with others, she has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of American Innovative Concepts, Inc. and National Life Network Inc. set forth in this First Amended Complaint.  Among other things, Defendant Nieves organized and created two of the Corporate Defendants, established and maintains at least two corporate bank accounts, and entered into telemarketing contracts on behalf of the Corporate Defendants.  Defendant Nieves resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

24.     The Corporate Defendants have operated as a common enterprise while engaging in the deceptive acts and practices and other violations of law alleged below.  The Corporate

Defendants have common ownership, operations, and control.  The Corporate Defendants conduct business out of the same principal locations, share employees and managers, use the same scripts, operate under the same telemarketing licenses, and commingle funds.  Because the Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices of the Corporate Defendants alleged below.  Defendants Hilgar, Martin, Settecase, and Nieves have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.

## COMMERCE

25.     At all times material to this First Amended Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44 and Florida Statutes Section 501.203(8).

## DEFENDANTS' BUSINESS PRACTICES

26.     Since at least 2012, Defendants have telemarketed medical alert systems to consumers throughout the United States and Canada.  In numerous instances, Defendants' telemarketing calls are initiated using a telemarketing service that delivers prerecorded voice messages through telephone calls.  This service is known as "voice broadcasting" or "robocalling."  In many instances, Unique Information Solutions Inc. has operated the autodialing system that delivers the prerecorded voice messages that are used to initiate Defendants' telemarketing calls.

27.     Many of the consumers who receive these unsolicited calls are elderly, live alone, and have limited or fixed incomes.  They often are in poor health, suffer from memory loss or

dementia, and rely on family members, friends, or health professionals to manage their finances and to make financial or health related decisions for them.

28.     In numerous instances, the prerecorded messages purport to be from "John from the shipping department of Emergency Medical Alert," and inform consumers that a medical alert system has been purchased for them.  The recording indicates that consumers will receive the system at "no cost to you whatsoever," and that the shipping costs have also already been paid.  The message instructs consumers to press a number on their telephone to schedule delivery, and it also gives consumers the option to press a different number to decline shipment of the medical alert system.

29.     In other instances, Defendants have used at least two other prerecorded messages, both of which indicate that the medical alert system is available to senior citizens for free.  The first such message states that the American Heart Association and American Diabetes Association are urging senior citizens to obtain medical alert systems, and that these systems are available for free.  The second message informs consumers that they qualify for $3000 in free grocery saving certificates as well as a free medical alert device.  Both of these messages instruct consumers to press a number for more information, or to press a different number to be removed from Defendants' calling list.

30.     When consumers press the number to speak to a live operator, they are connected to Defendants' representatives, who tell consumers that the medical alert system has a value of over $400, but that consumers will receive the system for free.  Defendants' representatives sometimes tell consumers that the system is free because a friend, family member or acquaintance referred the consumer to Defendants.   In other instances, Defendants representatives tell consumers that the system is free because a friend, family member or

acquaintance purchased the medical alert system for the consumer.  When asked, Defendants'
representatives cite confidentiality concerns in refusing to provide the name of the person who
referred the consumer to Defendants, or who purchased the medical alert system for the
consumer.

31.     Defendants' representatives explain that the medical alert system consists of a
necklace or bracelet that enables consumers to receive help during emergencies.  Defendants'
representatives tout that their medical alert system has been recommended by the American
Heart Association, the American Diabetes Association, and the National Institute on Aging.

32.     In fact, neither the American Heart Association, the American Diabetes
Association, nor the National Institute on Aging endorse Defendants' medical alert system or any
other medical alert system.

33.     Although the medical alert system was originally represented as being free, at the
end of the call Defendants' representatives inform consumers for the first time that there is a
monthly monitoring fee of $34.95.  To cover this monthly fee, consumers are required to provide
their credit card or bank account information, but they are assured that the billing cycle does not
start until consumers receive and activate the system.

34.     If consumers tell Defendants' representatives that they need time to think about
whether to get the system, or that they want to speak with their family before agreeing to provide
their payment information, Defendants' representatives respond that consumers will only receive
the system if they sign up that day.

35.     In numerous instances, after providing Defendants with their credit card or bank
account information, consumers discover that nobody they know referred them to Defendants or
purchased a medical alert system for them.  In addition, consumers usually are charged the first

monitoring fee within a day of receiving the telephone call, before they receive and activate the system.

36.     Many consumers subsequently try to cancel their accounts, either because they realize that Defendants' representatives lied to them or for other reasons.  Consumers often have difficulty canceling, however.  Some consumers have trouble reaching customer service representatives, while others reach representatives who either claim not to have the authority to issue cancellations or try to keep the consumers from cancelling by aggressively re-pitching the product or offering special deals.

37.     While telemarketing their medical alert systems, Defendants, acting directly or through one or more intermediaries, have made numerous calls to telephone numbers on the National Do Not Call Registry ("Registry"), as well as to consumers who have previously asked Defendants not to call them again.  In some instances, Defendants or their telemarketers also "spoof" their calls by transmitting phony Caller Identification information so that call recipients do not know the source of the calls.

38.     In numerous instances, Defendants, acting directly or through one or more intermediaries, have initiated telemarketing calls that failed to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call: the identity of the seller; that the purpose of the call is to sell goods or services; or the nature of the goods or services.  In numerous instances, Defendants, acting directly or through one or more intermediaries, have initiated prerecorded telemarketing calls to consumers that failed to promptly make such disclosures, or to immediately thereafter disclose the mechanism for asserting a Do Not Call request.

39.     In numerous instances, Defendants, acting directly or through one or more intermediaries, made outbound prerecorded calls that delivered messages to induce the sale of goods or services when the persons to whom these telephone calls were made had not expressly agreed, in writing, to authorize the seller to place prerecorded calls to such persons.

## VIOLATIONS OF THE FTC ACT

40.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

41.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act. 15 U.S.C. § 45(a).

### COUNT ONE
### Misrepresentation of Material Facts
### (By Plaintiff FTC)

42.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of medical alert systems, Defendants have represented, directly or indirectly, expressly or by implication, that:

A.     Defendants' medical alert system has already been purchased for the consumer by a friend, family member, or other acquaintance;

B.     Defendants' medical alert system is endorsed by the American Heart Association, the American Diabetes Association, and/or the National Institute on Aging; and

C.     Consumers will not be charged the first monitoring fee until they have received and activated the medical alert system.

43.     In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 42 of this First Amended Complaint,

A.      Defendants' medical alert system had not already been purchased for the consumer by a friend, family member, or other acquaintance;

B.      Defendants' medical alert system was not endorsed by the American Heart Association, the American Diabetes Association, and/or the National Institute on Aging; and

C.      Consumers were charged the first monitoring fee before they had received and activated the medical alert system.

44.      Therefore, Defendants' representations as set forth in Paragraph 42 of this First Amended Complaint are false and misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C.§ 45(a).

### THE TELEMARKETING SALES RULE

45.      Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108.  The FTC adopted the original Telemarketing Sales Rule in 1995, extensively amended it in 2003, and amended certain provisions thereafter.  16 C.F.R. Part 310.

46.      Defendants are "seller[s]" and/or "telemarketer[s]" engaged in "telemarketing," and Defendants have initiated, or have caused telemarketers to initiate, "outbound telephone call[s]" to consumers to induce the purchase of goods or services, as those terms are defined in the TSR, 16 C.F.R. § 310.2(v), (aa), (cc), and (dd).

47.      Under the TSR, an "outbound telephone call" means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution. 16 C.F.R. § 310.2(v).

48.     The TSR prohibits sellers and telemarketers from misrepresenting, directly or by implication, in the sale of goods or services, a seller's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity.  16 C.F.R. § 310.3(a)(2)(vii).

49.     The TSR prohibits sellers and telemarketers from making a false or misleading statement to induce any person to pay for goods or services.  16 C.F.R. § 310.3(a)(4).

50.     The TSR, as amended in 2003, established a "do-not-call" registry (the "National Do Not Call Registry" or "Registry"), maintained by the FTC, of consumers who do not wish to receive certain types of telemarketing calls.  Consumers can register their telephone numbers on the Registry without charge either through a toll-free telephone call or over the Internet at www.donotcall.gov.

51.     Consumers who receive telemarketing calls to their registered numbers can complain of Registry violations the same way they registered, through a toll-free telephone call or over the Internet at www.donotcall.gov, or by otherwise contacting law enforcement authorities.

52.     The TSR prohibits sellers and telemarketers from initiating an outbound telephone call to telephone numbers on the Registry.  16 C.F.R. § 310.4(b)(1)(iii)(B).

53.     The TSR prohibits sellers and telemarketers from initiating an outbound telephone call to any person when that person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered.  16 C.F.R. § 310.4(b)(1)(iii)(A).

54.     The TSR requires that sellers and telemarketers transmit or cause to be transmitted the telephone number and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a

15

telemarketing call, or transmit the customer service number of the seller on whose behalf the call is made and, when made available by the telemarketer's seller, the name of the seller.  16 C.F.R. § 310.4(a)(8).

55.     The TSR requires telemarketers in an outbound telephone call to disclose truthfully, promptly, and in a clear and conspicuous manner, the following information:

A.     The identity of the seller;

B.     That the purpose of the call is to sell goods or services; and

C.     The nature of the goods or services.

16 C.F.R. § 310.4(d).

56.     As amended, effective December 1, 2008, the TSR prohibits a telemarketer from engaging, and a seller from causing a telemarketer to engage, in initiating an outbound telephone call that delivers a prerecorded message to induce the purchase of any good or service unless the message promptly discloses:

A.     The identity of the seller;

B.     That the purpose of the call is to sell goods or services; and

C.     The nature of the goods or services.

16 C.F.R. § 310.4(b)(1)(v)(B)(ii).

57.     As amended, effective September 1, 2009, the TSR prohibits initiating a telephone call that delivers a prerecorded message to induce the purchase of any good or service unless the seller has obtained from the recipient of the call an express agreement, in writing, that evidences the willingness of the recipient of the call to receive calls that deliver prerecorded messages by or on behalf of a specific seller.  The express agreement must include the recipient's telephone number and signature, must be obtained after a clear and conspicuous disclosure that

the purpose of the agreement is to authorize the seller to place prerecorded calls to such person, and must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.  16 C.F.R. § 310.4(b)(1)(v)(A).

58.     Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE TELEMARKETING SALES RULE

### COUNT TWO
### Misrepresentation of Medical Alert Systems in Violation of the TSR
### (By Both Plaintiffs)

59.     In numerous instances, in connection with the telemarketing of goods and services, Defendants have misrepresented, directly or by implication, that:

A.     Defendants' medical alert system has already been purchased for the consumer by a friend, family member, or other acquaintance;

B.     Defendants' medical alert system is endorsed by the American Heart Association, the American Diabetes Association, and/or the National Institute on Aging; and

C.     Consumers will not be charged the first monitoring fee until they have received and activated the medical alert system.

60.     Defendants' acts and practices adversely affect consumers in Florida.  The State of Florida proceeds on behalf of Florida residents.

61.     Defendants' acts and practices, as described in Paragraph 59 above, are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. §§ 310.3(a)(2)(vii) and (a)(4).

**COUNT THREE**
**Violation of the National Do Not Call Registry**
**(By Plaintiff FTC)**

62.     In numerous instances, in connection with telemarketing, Defendants have

engaged, or caused a telemarketer to engage, in initiating an outbound telephone call to a

person's telephone number on the National Do Not Call Registry in violation of the TSR, 16

C.F.R. § 310.4(b)(1)(iii)(B).

**COUNT FOUR**
**Failure to Honor Do Not Call Requests**
**(By Plaintiff FTC)**

63.     In numerous instances, in connection with telemarketing, Defendants have

engaged, or caused a telemarketer to engage, in initiating an outbound telephone call to a person

who previously has stated that he or she does not wish to receive an outbound telephone call

made by or on behalf of the seller whose goods or services are being offered, in violation of the

TSR, 16 C.F.R. § 310.4(b)(1)(iii)(A).

**COUNT FIVE**
**Failure to Transmit Caller Identification**
**(By Plaintiff FTC)**

64.     In numerous instances, in connection with telemarketing, Defendants have failed

to transmit, or cause to be transmitted, the telephone number and name of the telemarketer or of

the seller to any caller identification service in use by a recipient of a telemarketing call, in

violation of the TSR, 16 C.F.R. § 310.4(a)(8).

**COUNT SIX**
**Initiation of Unlawful Prerecorded Messages On or After September 1, 2009**
**(By Plaintiff FTC)**

65.     In numerous instances on or after September 1, 2009, Defendants have made, or

caused others to make, outbound telephone calls that delivered prerecorded messages to induce

18

the purchase of goods or services when the persons to whom these telephone calls were made had not signed an express agreement, in writing, authorizing the seller to place prerecorded calls to such person.

66.     Defendants' acts and practices, as described in Paragraph 65 above, are abusive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.4(b)(1)(v)(A).

## COUNT SEVEN
### Failure to Make Required Oral Disclosures
### (By Plaintiff FTC)

67.     In numerous instances, including on or after December 1, 2008, in the course of telemarketing goods and services, Defendants have made, or caused others to make, outbound telephone calls that deliver a prerecorded message in which the telemarketer or message failed to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call:

      A.     The identity of the seller;

      B.     That the purpose of the call is to sell goods or services; and

      C.     The nature of the goods or services.

68.     Defendants' acts and practices, as described in Paragraph 67 above, are abusive telemarketing acts or practices that violate the TSR, 16 C.F.R. §§ 310.4(b)(1)(v)(B)(ii) and (d).

## VIOLATIONS OF THE FLORIDA DECEPTIVE AND
## UNFAIR TRADE PRACTICES ACT

69.     Section 501.204 of the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Part II, Florida Statutes, prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."

**COUNT EIGHT**
**Florida Deceptive and Unfair Trade Practices Act Violation**
**(By Plaintiff State of Florida)**

70.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of medical alert systems, Defendants have represented, directly or indirectly, expressly or by implication, that:

A.     Defendants' medical alert system has already been purchased for the consumer by a friend, family member, or other acquaintance; and

B.     Defendants' medical alert system is endorsed by the American Heart Association, the American Diabetes Association, and/or the National Institute on Aging; and

C.     Consumers will not be charged the first monitoring fee until they have received and activated the medical alert system.

71.     In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 70 of this First Amended Complaint,

A.     Defendants' medical alert system had not already been purchased for the consumer by a friend, family member, or other acquaintance;

B.     Defendants' medical alert system was not endorsed by the American Heart Association, the American Diabetes Association, and/or the National Institute on Aging; and

C.     Consumers were charged the first monitoring fee before they had received and activated the medical alert system.

72.     Defendants' representations as set forth in Paragraph 70 of this First Amended Complaint are false and misleading and likely to mislead consumers acting reasonably, and

consumers within the State of Florida and elsewhere were actually misled by Defendants' misrepresentations in violation of Section 501.204 of the FDUTPA.

### CONSUMER INJURY

73.      Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, the TSR and the FDUPTA.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

### THIS COURT'S POWER TO GRANT RELIEF

74.      Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

75.      Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the TSR, including the rescission or reformation of contracts, and the refund of money.

76.      Section 4(a) of the Telemarketing Act, 15 U.S.C. § 6103(a), empowers this Court to grant the State of Florida injunctive and such other relief as the Court may deem appropriate to halt violations of the TSR and to redress injury to consumers, including the award of damages, restitution, or other compensation.

21

77.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction to allow Plaintiff State of Florida to enforce its state law claims against Defendants in this Court for violations of the FDUPTA, and to grant such relief as provided under state law, including injunctive relief, restitution, costs and attorneys' fees, and such other relief to which the State of Florida may be entitled.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff FTC, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. § 53(b) and 57b, Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b); Plaintiff State of Florida, pursuant to Section 4(a) of the Telemarketing Act, 15 U.S.C. § 6103(a), and the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Part II; and pursuant to the Court's supplemental jurisdiction, 28 U.S.C. § 1367, and the Court's own equitable powers, request that the Court:

A.      Award Plaintiffs such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including, but not limited to, temporary and preliminary injunctions, an order freezing assets, immediate access, and the appointment of a receiver;

B.      Enter a permanent injunction to prevent future violations of the FTC Act, the TSR, and the FDUPTA by Defendants;

C.      Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, the TSR, and the FDUPTA, including, but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies;

D.      Award civil penalties in an amount up to $10,000 per transaction pursuant to Florida Statutes Section 501.2075 and up to $15,000 per transaction pursuant to Florida Statutes Section 501.2077 for the willful acts and practices of Defendants in violation of FDUTPA; and

E.      Award Plaintiffs the costs of bringing this action, as well as such other and
additional relief as the Court may determine to be just and proper.

Respectfully Submitted,

JONATHAN E. NUECHTERLEIN
General Counsel

Dated: February 25, 2014

DAVID A. O'TOOLE, Trial Counsel
MARISSA J. REICH
Email: dotoole@ftc.gov; mreich@ftc.gov
Federal Trade Commission, Midwest Region
55 West Monroe Street, Suite 1825
Chicago, Illinois 60603
Telephone: (312) 960-5634
Facsimile: (312) 960-5600

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION


PAMELA JO BONDI
Attorney General
State of Florida

Dated: February 25, 2014

DENISE KIM
Assistant Attorney General
Florida Bar # 69369
Email: Denise.Kim@myfloridalegal.com
Office of the Attorney General
Consumer Protection Division
135 W. Central Blvd., Suite 1000
Orlando, Florida 32801
Telephone:  (407) 245-0833
Facsimile:  (407) 245-0365

Attorney for Plaintiff
STATE OF FLORIDA
OFFICE OF THE ATTORNEY GENERAL

23