# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**FEDERAL TRADE COMMISSION
and STATE OF FLORIDA, OFFICE OF
THE ATTORNEY GENERAL,
DEPARTMENT OF
LEGAL AFFAIRS,**

**Plaintiffs,**

**-vs-**                                        **Case No.  6:14-cv-8-Orl-41DAB**

**WORLDWIDE INFO SERVICES, INC., a
Florida corporation, also d/b/a THE
CREDIT VOICE;**

**ELITE INFORMATION SOLUTIONS
INC., a Florida corporation, also d/b/a THE
CREDIT VOICE;**

**ABSOLUTE SOLUTIONS GROUP INC., a
Florida corporation, also d/b/a THE
CREDIT VOICE;**

**GLOBAL INTERACTIVE
TECHNOLOGIES, INC., a Florida
corporation, also d/b/a THE CREDIT
VOICE INC.;**

**GLOBAL SERVICE PROVIDERS, INC., a
Florida corporation;**

**THE CREDIT VOICE, INC., a Florida
corporation, also d/b/a TCV;**

**LIVE AGENT RESPONSE 1 LLC, a
Florida limited liability company, also d/b/a
LAR;**

**ARCAGEN, INC., a Florida corporation,
also d/b/a ARI;**

**AMERICAN INNOVATIVE CONCEPTS,
INC., a Florida corporation;**

**UNIQUE INFORMATION SERVICES
INC., a Florida corporation;**

**MICHAEL HILGAR, individually and as an officer or manager of Worldwide Info Services, Inc., Elite Information Solutions Inc., Absolute Solutions Group Inc., Global Interactive Technologies, Inc., Global Service Providers, Inc., The Credit Voice, Inc., Live Agent Response 1 LLC, Arcagen, Inc., and American Innovative Concepts, Inc.;**

**GARY MARTIN, individually and as an officer or manager of Global Interactive Technologies, Inc., The Credit Voice, Live Agent Response 1 LLC, Arcagen, Inc., and American Innovative Concepts, Inc.; and**

**JOSEPH SETTECASE, individually and as an officer or manager of Unique Information Services Inc.,**

**Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **AMENDED MOTION FOR APPROVAL AND PAYMENT OF FEES AND EXPENSES (Doc. No. 91)** |
| **FILED:** | **August 12, 2014** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part and **DENIED** in part.

Robb Evans & Associates LLC, the Receiver ("Receiver") of Worldwide Info Service, Inc., Elite Information Solutions, Inc., Absolute Solutions Group, Inc., Global Interactive Technologies, Inc., Global Service Providers, Inc., The Credit Voice, Inc., Live Agent Response 1LLC, Arcagen, Inc., American Innovative Concepts, Inc., and Unique Information Services, Inc., and their successors,

assigns, subsidiaries and affiliates (the "Receivership Defendants"), moves for an order approving and authorizing payment from the assets of the receivership estate of the fees and expenses of the Receiver, its members and staff, and of the Receiver's counsel, Carlton Fields Jorden Burt, P.A. ("Carlton Fields"), incurred from the inception of the case through June 30, 2014 (the "Initial Expense Period"). According to the papers filed, the Receiver seeks fees

> in the aggregate sum of $132,131.20 and costs of $65,021.22. The Receiver's fees include the Receiver's fees of $49,812.30, senior and accounting staff of $56,348.95, and IT Management of $25,969.95. Carlton Fields [] has incurred fees of $15,965.92 and no costs,[1] for total Receiver's fees and costs and attorney's fees and costs of **$213,118.34 for the Initial Expense Period**.

(Doc. 91, p. 2 emphasis added).

The papers reflect that the Receiver has recovered $207,629.09 "to date," and no additional asset or anticipated recovery is identified or expected. *Id.* Thus, the Receiver seeks an "initial" award that exceeds the entirety of the Receivership Estate, and would leave no assets for payment to any consumer or creditor.

Although the motion does not contain a Local Rule 3.01(g) certificate, the Certificate of Service indicates that counsel of record in this matter received notice of the request, and a copy of the motion was mailed to the known creditors. To date, no opposition papers have been filed. Nonetheless, upon review of the motion, the supporting Declarations and the applicable law, the Court cannot recommend that the motion be granted, as presented. Instead, and for the reasons set forth herein, it is **respectfully recommended** that the motion be **granted, in part, and denied, in part, in that a reduced award be made.**

I. Background

According to the motion and docket, on January 6, 2014, Plaintiffs Federal Trade Commission ("FTC") and the State of Florida ("Plaintiffs") commenced this action against the Receivership

---

[1] Actually, according to the Receiver Report attached to the motion as an exhibit, Carlton Fields claims $15,385.95 in legal fees and $579.97 in legal costs (Doc. 91-1, p. 12).

Defendants and individual defendants alleging violations of the Federal Trade Commission Act, 15 U.S.C. §§ 6101-6108, and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Chapter 501, Part II, Florida Statutes (2012). On January 7, 2014, the Court issued its *Ex Parte* Temporary Restraining Order with Asset Freeze, Appointment of Receiver and Other Equitable Relief, and Order to Show Cause Why Preliminary Injunction Should Not Issue (the "TRO") (Doc. 24). The TRO appointed Robb Evans and Robb Evans Associates, LLC as Receiver of the Receivership Defendants. On January 9, 2014, the Receiver entered the Receivership Defendants' business premises in Altamonte Springs, Florida and took custody of the files and records of the Receivership Defendants.

On January 16, 2014, the Court conducted a hearing (Doc. 28). On January 24, 2014, by stipulation of the Receivership Defendants and Plaintiffs, the Court entered the Preliminary Injunction with Asset Freeze, Appointment of Receiver, and Other Equitable Relief (the "Preliminary Injunction") (Doc. 35). The TRO and the Preliminary Injunction set forth the obligations and duties of the Receiver, including the submission of periodic reports and applications for payment. Among other things, the Court directed the Receiver to:

> 4. Conserve, hold, and manage all receivership assets, and perform all acts necessary or advisable to preserve the value of those assets, in order to prevent any irreparable loss, damage, or injury to consumers or to creditors of the Stipulating Receivership Defendants . . .
> * * *
> 6. Prevent the inequitable distribution of assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Stipulating Receivership Defendants . . .

 (Doc. 35, p. 19, *see also* Doc. 24).

The TRO and the Preliminary Injunction both provided:

G. COMPENSATION OF RECEIVER

IT IS FURTHER ORDERED that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and

for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by, or in the possession or control of, or which may be received by the Stipulating Receivership Defendants. **The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Order**. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

(Doc. 35, p. 28  emphasis added, Doc. 24, p. 28).

Despite this direction, the Receiver did not file any request for compensation within sixty days of issuance of the TRO or even within sixty days of the Preliminary Injunction.  Instead, on April 17, 2014, the Receiver filed his motion for approval and payment of fees and expenses incurred from inception of the Receivership through February 28, 2014 (Doc. 73).  On April 24, 2014, the Court denied the motion, without prejudice, noting:

> The Receiver fails to fully advise the Court as to what has been collected to date, what other claims and assets remain to be pursued, how many claimants and other creditors are involved, and the amounts of such liabilities. Absent this information, the Court has no basis to evaluate the reasonableness of the fees and costs sought. As the Receiver fails to provide information regarding the status of the current Estate, the tasks yet to be completed, and an estimate of additional fees and costs likely to be incurred to conclude case; and the "initial" fees and costs sought here total almost all of the funds collected to date (Doc. 74-1),[] the Court cannot approve this application as "reasonable."

(Doc. 76).  The Court granted leave for the Receiver to renew his application, "upon a more particularized showing outlined above, and which should include a justification for the award, in light of what appears to be a limited result." *Id.*  More than fifteen weeks later, the instant motion was filed.

## II.  Applicable Law

There is no doubt that the Receiver is entitled to reasonable compensation and expenses, pursuant to the Order of appointment. The Court has traditionally determined reasonableness by utilizing the familiar lodestar approach, calculating a reasonable hourly rate in the relevant market and

the reasonable number of hours expended. *See, e.g., S.E.C. v. Aquacell Batteries, Inc.,* No. 6:07–cv–608–Orl–22DAB, 2008 WL 276026, *3 (M.D. Fla. Jan 31, 2008); *F.T.C. v. Peoples Credit First, LLC,* No. 8:03-cv-2353-T-17TBM, 2005 WL 3981599, at * 3 (M.D. Fla. April 19, 2006) *(citing Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974)); *see also Norman v. Hous. Auth.*, 836 F.2d 1292, 1299-1302 (11th Cir. 1988). Similarly, requests for reimbursement of expenses must be supported by sufficient information for the Court to determine that the expenses are actual and were necessarily incurred. *See Peoples Credit First, LLC,* 2005 WL 3981599, at * 5; *see also In re Southeast Banking Corp.*, 314 B.R. 250, 271 (S.D. Fla. 2004).

In awarding attorney's fees, a Court must (1) determine the nature and extent of the services rendered; (2) determine the value of those services; and (3) consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). Part of "determining the nature and extent of the services rendered," however, includes an analysis as to the reasonableness of the services rendered, bearing in mind the nature of a receivership. As the Supreme Court has noted:

> The receiver is an officer of the court, and subject to its directions and orders . . . . [H]e is . . . permitted to obtain counsel for himself, and counsel fees are considered as within the just allowances that may be made by the court. . . . So far as the allowances to counsel are concerned, it is a mere question as to their reasonableness. . . . The compensation is usually determined according to the circumstances of the particular case, and corresponds with the degree of responsibility and business ability required in the management of the affairs intrusted to him, and the perplexity and difficulty involved in that management.

*Stuart v. Boulware*, 133 U.S. 78, 81-82 (1890).

The Receiver and all professionals must exercise proper billing judgment in seeking fees from the receivership estate, and should limit their work to that which is reasonable and necessary. *See, e.g., Peoples Credit First, LLC*, 2005 WL 3981599, at * 4. After all, "[n]o receivership is intended to generously reward court-appointed officers." *S.E.C. v. W. L. Moody & Co.*, 374 F.Supp. 465, 483 (S.D. Tex. 1974), *aff'd*, 519 F.2d 1087 (5th Cir. 1975)). This is particularly true when the receivership

estate will not recover sufficient assets to pay full restitution to the victims of the fraud or misconduct alleged in the complaint.

The factors in determining the reasonableness of a receivership fee may include (1) the results achieved by the Receiver; (2) the ability, reputation and professional qualities of the Receiver necessary for the job; (3) the size of the Estate and its ability to afford the expenses and fees; and (4) time required to conclude the receivership. *See Moody, supra*, 374 F.Supp. 465, 480-83.  In the end, "Whether a receiver merits a fee is based on the circumstances surrounding the receivership, and 'results are always relevant.'" *S.E.C. v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992) (*quoting S.E.C. v. Moody*, *supra*).

III. Analysis

The Receiver contends that "there is no dispute as to any of the *Moody* factors" and he is entitled to compensation as 1) he and his staff and counsel conducted extensive work in this matter; 2) "prevented irreparable harm to members of the public who were targeted by the business practices of the Receivership Defendants;" and 3) recovered $207,352.37 to date, "which is sufficient to cover most of the fees and expenses sought by this Motion" (Doc. 9, pp. 15-16).  While the Court agrees that the Receiver and counsel are entitled to *reasonable* compensation, the Court is not persuaded that the amounts sought here are reasonable.

*The complexity of the problem and the results achieved*

As set forth in the papers and in the Receiver's Report, the activities of the Receiver involved securing the Receivership Defendants' business premises, taking possession and control of the records, documents and property, disabling the robodialers, and interviewing employees and defendants. The Receiver also interviewed and obtained information from many employees, issued third party subpoenas and sought and obtained a return of $35,000 from the Receivership Defendants' former counsel.  Most if not all of these activities are actions routinely undertaken taken by receivers

in the marshaling of assets and management of businesses in receivership.  Indeed, although the Receiver claims over $75,000 spent on "senior and accounting staff" and "IT management," the business operations of the Receivership Defendants did not appear to be particularly sophisticated or complex.

As for the results achieved, the Receiver has recovered slightly over $200,000.  While this amount is not unimpressive, the Receiver claims he expended well over $200,000 worth of professional effort to secure this.  Viewed in that light, the monetary result is *de minimis.*  As for intangible results, the Receiver took possession of the business operations and claims that he prevented irreparable harm to the public. While the Receiver certainly played a role here, the lion's share of credit for that accomplishment goes to Plaintiffs.  Indeed, two weeks after the Receiver took possession of the assets, the Court entered the Preliminary Injunction with Asset Freeze **by stipulation** of the Receivership Defendants and Plaintiffs.  Viewed cumulatively, the Court finds the Receiver and his professionals expended a great deal of time and energy to secure a relatively limited result.  This factor does not support the award requested.

*The abilities and reputation of the Receiver and the time required*

According to the papers, the Receiver utilized the services of at least seven "senior accounting" staff members and an untold number of "support staff" (Doc. 91-1, p. 11).  For reasons unclear to the Court, the unnamed "support staff" nonetheless bill for their services. *Id.*  In addition to the accounting staff, two IT management professionals billed over $25,000 for their services.  At least six additional professionals assisted the Receiver.  All of the Receiver's time-keepers billed at rates ranging from $55 an hour to $382.50.  *Id.*, p. 14.  As for legal counsel, two attorneys provided services at $445.50 an hour, with an additional time-keeper billing at $189.00. (Doc. 91-2).[2]

---

[2]This time keeper – Renee Kemper – is not otherwise described and her status is unclear.  The Court notes that she does not appear to be an attorney licensed to practice law in this state, according to the Florida Bar.  To the extent she is a paralegal, the rate of $189 an hour is outside that which is reasonable for paralegal services in this area.

The Court acknowledges the experience and professional qualifications of the Receiver, his firm and the attorneys retained. *See* Docs. 8, 91-2. This factor would normally weigh in favor of the award, however, the fact that the Receiver is so experienced and yet expended the entirety of the Estate on fees and expenses gives the Court pause. An experienced Receiver knows that one must trim the sails to fit the wind. While no Receiver can be expected to know the size of the Estate at the outset and a certain amount of time and effort is required initially to marshal the assets and get the lay of the land, the Receiver offers no explanation as to why the efforts of over 15 professionals (and the inherent duplication of effort that comes with such staffing) was required here. The sheer number of professionals is disproportionate to the task at hand and results achieved. While such staffing could be appropriate if each professional was performing a discrete task, no such showing is presented. The Receiver does not persuade the Court that all of these professionals were needed and no unnecessary duplication of services was performed.

Additionally, this level of staffing came at significant related expense. According to the papers filed, the Receiver spent *more than one third* of the entire Estate on travel time and travel expense. The fact that over $80,000 was spent just on this non-substantive task (Doc. 91-1, pp. 12, 15, 49) raises a legitimate question as to whether the surplus staffing and related expenditures were reasonable and necessary. Had the Receiver filed his initial fee request in March, as ordered, perhaps the issue of appropriate staffing and expenditures in view of the anticipated recovery could have been addressed and adjustments made going forward.[3] At this juncture, however, the Court is being asked to review the totality of expenditures already incurred from the inception of the receivership through the end of June, with the Receiver having already "spent" the corpus. The Court cannot condone this approach.

*The ability of the Estate to afford the fees, and the time required to conclude the receivership*

---

[3]This may not have prevented much of the expenditures, as it appears that the majority of fees and expenses were incurred in January and February.

In making its appointment, the Court charged the Receiver to "perform all acts necessary or advisable to preserve the value of [the] assets." The Court does not see sufficient evidence of that in this request. Indeed, if granted, the award would eliminate all assets, leaving nothing for distribution to the creditors. As the request *exceeds* the entirety of the Estate, the Estate does not have the ability to pay it. This factor weighs heavily in favor of denying the request.

Additionally, the Receiver presents this motion as its "initial" request. This leads the Court to conclude that additional requests will be forthcoming, although significant expenses are not anticipated. The Receiver fails to explain how it intends to cover future requests, in view of its representation that no additional assets have been identified.

In view of the size of the Estate and all of the foregoing reasons, the Court concludes that the requested award is not warranted, and **respectfully recommends** that the motion be denied, as to the amount sought.

*An appropriate award*

While the Court does not find that an award in the requested amount of $213,118.34 is appropriate, it does recognize that the Receiver is entitled to be compensated to the extent reasonable services were necessarily performed. Normally, the Court would review the billing sheets and perform a lodestar analysis. The papers here, however, are not presented in sufficient fashion for such an analysis to be undertaken.[4] As such, the Court must rely on the information of record, including the information tendered to the Court prior to the appointment (Doc. 8), and the Court's own experience.

---

[4]Counsel has redacted the description of some of the services performed. As for the remaining descriptions, while some detail is provided, many of the expenses and fees are unexplained. For example, the identity and service of "support staff" is not provided. This makes it impossible to evaluate whether these are paralegals performing a quasi-professional service or purely clerical tasks, included in overhead and not billable in this context. Moreover, despite the inclusion of fees for seven senior accountants, the Receiver seeks over $10,000 for the services of "Hays Financial Consulting, LLC." (Doc. 91-1, pp. 11-12). The use of block billing, where compensable tasks are included in the same time entry as non-compensable clerical tasks, also prohibits a straight-forward review.

The Court has reviewed the fees and expenses claimed (summarized at Doc. 91-1, pp. 11-12) and has made approximate deductions for duplication, excessive staffing or travel, and for unexplained, unreasonable or otherwise non-compensable services. *See, e.g., S.E.C. v. Kirkland,* No. 6:06–cv–183–Orl–28KRS, 2008 WL 4144424, *4 (M.D. Fla. Sept. 5, 2008) ("Work that is purely clerical in nature, such as contacting court reporters, and mailing, filing, and delivering documents is not compensable").  As for items identified as "costs," as noted above,  requests for reimbursement of expenses must be supported by sufficient information for the Court to determine that the expenses are actual and were necessarily incurred. *See Peoples Credit First, LLC,* 2005 WL 3981599, at * 5; *see also In re Southeast Banking Corp.*, 314 B.R. 250, 271 (S.D. Fla. 2004).  Despite the fact that the Court advised the Receiver of this requirement by prior Order (Doc. 76), the Receiver provides scant or no information with respect to the vast majority of costs claimed. While certain costs are self-explanatory (service of process, parking for attendance at hearing), other costs are too conclusory to evaluate.[5]  Thus, the Court finds and recommends as follows:

---

[5]Copying charges are one example.  The Receiver and counsel claim over $500 for "copying cost."  This may or may not be reasonable, depending on the amount of copies made and the individual cost per page.  Absent this information, however, the Court cannot evaluate the claimed expense.

| RECEIVER'S FEES | | |
|---|---|---|
| **Description** | **Amount Claimed** | **Amount Recommended** |
| Business Expenses (security/alarm, moving/storage/box records) | $1,316.49 | $1,316.49 This item should be reimbursed in full |
| Total Receiver fees | $49,812.30 | $37,359.23 (25% less than full amount claimed) |
| Total Accounting Staff fees | $56,348.95 | $42,261.72 (25% less than full amount claimed) |
| IT Management fees | $25,969.95 | $20,775.96 (20% less than full amount claimed) |
| **TOTAL RECEIVER FEES** | | **$101,713.40** |
| | | |
| RECEIVER'S COSTS | | |
| **Description** | **Amount Claimed** | **Amount Recommended** |
| Assets/credit searches | $252.00 | $252.00 (self-explanatory) |
| Copying | $302.28 | None (absent explanation) |
| Hardware/software | $98.55 | None (absent explanation) |
| Hays Financial Consulting, LLC | $10,701.72 | None (absent explanation and in view of the senior accountant fees claimed) |
| IT service | $330.00 | $330 (the Court assumes this is the internet provider cost for the Receivership Defendants) |
| Postage/delivery | $654.38 | $654.38 (self-explanatory) |
| Supplies/telephone | $254.15 | None ("supplies" too vague to evaluate and no explanation as to how much of this total is telephone expense) |
| Travel Expense | $52,237.39 | No more than $20,000 is reasonable |
| Website maintenance | $190.75 | $190.75(self-explanatory) |
| **TOTAL COSTS** | | **$21,427.13** |

| LEGAL FEES and COSTS | | |
|---|---|---|
| **Description** | **Amount Claimed** | **Amount Recommended** |
| Legal Fees | $15,385.95 | $15,102.45 [6] |
| Legal Costs | $579.97 | $308.37 (deducting $271.60 in unexplained copying charges) |
| **LEGAL FEES and COSTS** | | **$15,410.82** |
| | | |
| **TOTAL** | | **$138,551.35** |

The Court recognizes that the total award recommended is approximately $74,566 less than the $213,118.34 claimed in the request.  In view of the untimeliness of the request, the lack of justification and support presented (despite prior direction from the Court), and the *Moody* factors as discussed above, the Court finds the recommended total amount of $138,551.35 to be an appropriate amount for the reasonable and necessary tasks performed and expenses incurred, as established by the record the Receiver chose to present.  It is therefore **respectfully recommended** that the motion be granted, in part and denied, in part, and that an award in the amount of $138,551.35 be approved.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on September 16, 2014.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy

---

[6] Two attorneys billed on the file.  While the Court finds the hourly rates for counsel to be on the high side, billing judgment is evident as the total amount claimed is within reason for the tasks completed.  The Court deducts $283.50 for the services of non-lawyer Renee Kemper.  As no explanation is offered as to her position or qualifications, no basis for any award for her services is provided.