# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**FEDERAL TRADE COMMISSION**
**and**
**STATE OF FLORIDA, OFFICE OF THE**
**ATTORNEY GENERAL, DEPARTMENT**
**OF LEGAL AFFAIRS,**

                    **Plaintiffs,**

**-vs-**                                                      **Case No.  6:14-cv-8-Orl-41DAB**

**WORLDWIDE INFO SERVICES, INC., a**
**Florida corporation, also d/b/a THE**
**CREDIT VOICE;**

**ELITE INFORMATION SOLUTIONS**
**INC., a Florida corporation, also d/b/a THE**
**CREDIT VOICE;**

**ABSOLUTE SOLUTIONS GROUP INC., a**
**Florida corporation, also d/b/a THE**
**CREDIT VOICE;**

**GLOBAL INTERACTIVE**
**TECHNOLOGIES, INC., a Florida**
**corporation, also d/b/a THE CREDIT**
**VOICE INC.;**

**GLOBAL SERVICE PROVIDERS, INC., a**
**Florida corporation;**

**THE CREDIT VOICE, INC., a Florida**
**corporation, also d/b/a TCV;**

**LIVE AGENT RESPONSE 1 LLC, a**
**Florida limited liability company, also d/b/a**
**LAR;**

**ARCAGEN, INC., a Florida corporation,**
**also d/b/a ARI;**

**AMERICAN INNOVATIVE CONCEPTS,**
**INC., a Florida corporation;**

**UNIQUE INFORMATION SERVICES**
**INC., a Florida corporation;**

**MICHAEL HILGAR, individually and as an officer or manager of Worldwide Info Services, Inc., Elite Information Solutions Inc., Absolute Solutions Group Inc., Global Interactive Technologies, Inc., Global Service Providers, Inc., The Credit Voice, Inc., Live Agent Response 1 LLC, Arcagen, Inc., and American Innovative Concepts, Inc.;**

**GARY MARTIN, individually and as an officer or manager of Global Interactive Technologies, Inc., The Credit Voice, Live Agent Response 1 LLC, Arcagen, Inc., and American Innovative Concepts, Inc.; and**

**JOSEPH SETTECASE, individually and as an officer or manager of Unique Information Services Inc.,**

**YULUISA NIEVES, individually and as an officer or manager of American Innovative Concepts, Inc. and National Life Network Inc.,**

**Defendants.**
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motions filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND MONETARY RELIEF AGAINST DEFENDANT LIVE AGENT RESPONSE 1 LLC (Doc. No. 106)** |
| **FILED:** | **December 5, 2014** |
| | **THEREON it is RECOMMENDED that the motion be GRANTED.** |

As set forth in the detailed motion, which has drawn no opposition from any party, Plaintiffs, the Federal Trade Commission ("FTC") and the State of Florida, Office of the Attorney General, Department of Legal Affairs (collectively, "Plaintiffs"), move this Court pursuant to Federal Rule of Civil Procedure 55(b)(2) for entry of default judgment against Defendant Live Agent Response 1 LLC ("Live Agent"), consisting of permanent injunctive relief, equitable monetary relief of $6,669,285.57, and "other equitable relief tailored to prevent Live Agent's participation in future deceptive enterprises." It is **respectfully recommended** that the motion be **granted, as set forth more fully below.**

### *Background*

According to the motion and docket, on January 6, 2014, Plaintiffs commenced this action alleging a fraudulent telemarketing scheme in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), numerous provisions of the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, and Section 501.204 of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Chapter 501, Part II, Florida Statutes (2012) (Doc. 1). Plaintiffs contemporaneously filed their *Ex Parte* Motion for Temporary Restraining Order with Asset Freeze, Appointment of a Receiver, Other Equitable Relief, and An Order to Show Cause Why a Preliminary Injunction Should Not Issue ("TRO"). The Court issued the TRO on January 7, 2014 (Doc. 24.) Live Agent did not appear at the show cause hearing (Doc. 27) and, on January 17, the Court entered a preliminary injunction against it (Doc. 30.)

On February 25, 2014, Plaintiffs filed their First Amended Complaint for Permanent Injunction and Other Equitable Relief ("First Amended Complaint"), adding National Life Network Inc. and Yuluisa Nieves as additional defendants (Doc. 53). Live Agent was served with the Complaint, Summons and all of the papers accompanying Plaintiffs' TRO motion (Doc. 64), and was subsequently served with the First Amended Complaint (Doc. 53-1). Despite such service, Live Agent failed to appear, answer, or otherwise plead in response to Plaintiffs' Complaint or First

Amended Complaint, and, upon motion, the Clerk entered a default on October 28, 2014 (Doc. 99).

Plaintiffs' settled with the remaining defendants (Docs. 97 and 97-1), and an Order and Permanent Injunction and related Judgments have been entered (Docs. 102-104). Plaintiffs now seek entry of the Proposed Default Judgment and Order for Permanent Injunction and Other Equitable Relief as to Live Agent (Doc. 106-2). In support of the motion, Plaintiffs filed a supporting Declaration (Doc. 106-1) and has incorporated prior Declarations and evidence, including the evidence submitted in support of Plaintiffs' motion for a TRO. *See* Plaintiffs' Exhibits ("PX") 2 through 48, filed January 6, 2014 (Docs. 5-3 to 5-31).

## *Analysis*

### *I. Liability*

The effect of the entry of a default is that all of the factual allegations in the Complaint are taken as true, save for the amount of unspecified damages. Thus, if liability is well-pled in the complaint, it is established by the entry of a default. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987). A court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for entry of a default judgment. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."). Importantly, however, a default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. Federal Rule 54(c), Fed. R. Civ. P. (2014).

As set forth in great detail in the Amended Complaint, the well-pled allegations, admitted upon the default, establish that Live Agent, acting alone or in concert with others, violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), as well as various provisions of the FTC's regulations, 16 C.F.R. Part 310, and Section 501.204 of FDUTPA, Chapter 501, Part II, Florida Statutes, in making numerous misrepresentations via illegal robocalls (and other wrongdoing) in connection with the operation of

a telemarketing enterprise to sell medical alert systems throughout the United States and Canada. Despite receipt of the Amended Complaint and the instant motion, Live Agent has not filed anything to contest these well founded allegations and, indeed, has notified Plaintiffs' counsel that it has no objection to entry of the default judgment. *See* Doc. 98-1. Liability is established. *See McGregor v. Chierico,* 206 F.3d 1378, 1388 (11th Cir. 2000) ("Liability under the FTC Act is predicated upon certain misrepresentations or misleading statements, coupled with action taken in reliance upon those statements.").

## II. The Scope of Relief Sought

In the Amended Complaint, citing to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. § 53(b) and 57b, Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), Section 4(a) of the Telemarketing Act, 15 U.S.C. § 6103(a), the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Part II, and "the Court's own equitable powers," Plaintiffs request that the Court:

A.     Award Plaintiffs such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including, but not limited to, temporary and preliminary injunctions, an order freezing assets, immediate access, and the appointment of a receiver;

B.     Enter a permanent injunction to prevent future violations of the FTC Act, the TSR, and the FDUPTA by Defendants;

C.     Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, the TSR, and the FDUPTA, including, but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies;

D.     Award civil penalties in an amount up to $10,000 per transaction pursuant to Florida Statutes Section 501.2075 and up to $15,000 per transaction pursuant to Florida Statutes Section 501.2077 for the willful acts and practices of Defendants in violation of FDUTPA; and

E.     Award Plaintiffs the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

(Doc. 53).

While the Court has already granted the preliminary relief sought,  Plaintiffs have tendered

a proposed Default Judgment, which includes a variety of provisions, including injunctive relief and

other monetary and equitable relief.  The scope of appropriate relief is broad, as the Eleventh Circuit

has determined:

> Section 13(b) of the Federal Trade Commission Act authorizes the FTC to seek, and
> the district courts to grant, preliminary and permanent injunctions against practices
> that violate any of the laws enforced by the Commission.[footnote omitted] Although
> section 13(b) does not expressly authorize courts to grant monetary equitable relief,
> the FTC argues that the unqualified grant of statutory authority to issue an injunction
> under section 13(b) carries with it the full range of equitable remedies, including the
> power to grant consumer redress and compel disgorgement of profits. We agree with
> the FTC.

*FTC v. Gem Merch. Corp*., 87 F.3d 466, 468 (11th Cir. 1996); *see also FTC v. Amy Travel Serv.,* 875

F.2d 564 (7th Cir. 1989). With this in mind, the Court reviews the tendered Proposed Default

Judgment (Doc. 106-2).

*Injunctive relief*

The proposed injunctive relief, set forth in sections I-IV and VI of the proposed Default

Judgment, is necessary and appropriate here.  The Commission has cited numerous cases where

permanent bans on similar activities were imposed.  *See,* Doc. 106, fn. 8.  Further, the proposed

Default Judgment's injunctive provisions are similar to the provisions already entered by the Court

with respect to the settlement with the other Defendants (Doc. 102). While that Order was based on

a settlement and this Order follows a default, based on the showing presented here and in the absence

of any objection, the Court recommends the entry of the proposed injunctive relief, to include Sections

I - VI, and VI.

Additionally, the Proposed Default Judgment includes a provision outlining requirements for

completion of the Receivership (Section VII); a provision requiring Defendant Live Agent to

cooperate with the Receiver (Section VIII); a provision requiring acknowledgment of receipt of the

Order (Section IX); a provision requiring compliance reporting by Defendant Live Agent (Section X);

a provision requiring maintenance of records (Section XI); a provision allowing the Commission to monitor Defendant Live Agent's compliance with the Order (Section XII); and a provision lifting the asset freeze once the monetary judgment has been satisfied (Section XIII).

The provisions regarding the Receivership (VII-VIII) are similar to provisions included in prior Orders (Doc. 102, Doc. 30). To the extent this Defendant is already under an obligation to cooperate with the Receiver and the Receiver has already been advised to complete the Receivership, these provisions are surplus, and the District Court may include them or not, as it sees fit. With respect to the reporting and monitoring provisions (Sections IX through XIII), Plaintiff states only that such provisions "are standard in FTC fraud cases and aid the FTC in monitoring defendants' compliance with court orders." There is no discussion as to whether any of these "standard" cases (none of which are specifically cited) address the propriety of imposing these conditions in the default context where, as here, they are not included in the prayer for relief.[1] Nonetheless, in view of the similar provisions already entered by this Court (Doc. 102), Judge Antoon's decision in *FTC v. The Green Savers, LLC*, No. 6:12-cv-01588-ORL-28-DAB (M.D. Fla., Sept. 25, 2013), and the absence of any objection by Live Agent, the Court recommends the entry of the proposed relief.

*Monetary relief*

In addition to injunctive relief, the Court has the equitable authority under the FTC Act, 15 U.S.C. §§ 41, *et seq.*, to order monetary relief. *See McGregor v. Chierico*, 206 F.3d 1378, 1388-89 (11th Cir. 2000); *GemMerch.*, 87 F.3d at 469-70. The Eleventh Circuit has determined that the appropriate measure of such relief is a defendant's unjust enrichment or net revenue. *FTC v. Wash. Data Res.*, 704 F.3d 1323, 1326 (11th Cir. 2013). The proposed Default Judgment includes a monetary judgment against Defendant Live Agent in the amount of $6,669,285.57. According to the motion and supporting evidence:

---

[1]To the extent similar provisions are included in the Court's November 13, 2014 Order, that was in the context of approving a settlement with appearing Defendants.

"[t]his amount equals the total consumer loss resulting from Defendants' fraudulent business practices between December 6, 2012 and June 18, 2013, the period during which Defendant Live Agent was involved in the business. The figure is based on Plaintiffs' analysis of defendants' bank records and the total consumer harm caused by Defendants, as stipulated by Plaintiffs and the other Defendants in this action, $22,989,609. (See Doc. 102 at 6.) The proposed Default Judgment prevents double recovery by Plaintiffs, providing that Plaintiffs may not collect any amounts from Defendant Live Agent that would result in Plaintiffs recovering more than $22,989,609 in total.

(Doc. 106, p. 12).

Absent any objection from Live Agent, the Court finds this showing to be sufficient. It is therefore **respectfully recommended** that the motion be **granted**, and that the Court find that entry of default judgment is appropriate, and such judgment should include the findings of fact and injunctive and monetary relief set forth in the Proposed Default Judgment.

| | |
|---|---|
| **MOTION:** | **MOTION TO WITHDRAW AS COUNSEL (Doc. No. 105)** |
| **FILED:** | **November 21, 2014** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED** *after* the District Court has acted on the motion for entry of default judgment.[2]

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on January 5, 2014.

_David A. Baker_
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy

_____

[2]As all Defendants have a right to respond or object to the instant recommendation and the corporate defendants can not appear without counsel, withdrawal should only be allowed after the District Court has entered its decision with respect to the instant motion for entry of default judgment.