UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**FEDERAL TRADE COMMISSION and
STATE OF FLORIDA, OFFICE OF
THE ATTORNEY GENERAL,
DEPARTMENT OF LEGAL AFFAIRS,**

                **Plaintiffs,**

**v.**                                          **Case No:  6:14-cv-8-Orl-41DAB**

**WORLDWIDE INFO SERVICES, INC.,
ELITE INFORMATION SOLUTIONS
INC., ABSOLUTE SOLUTIONS GROUP
INC., GLOBAL INTERACTIVE
TECHNOLOGIES, INC., GLOBAL
SERVICE PROVIDERS, INC., LIVE
AGENT RESPONSE 1 LLC, ARCAGEN,
INC., AMERICAN INNOVATIVE
CONCEPTS, INC., UNIQUE
INFORMATION SERVICES INC.,
MICHAEL HILGAR, GARY MARTIN,
JOSEPH SETTECASE, NATIONAL
LIFE NETWORK INC. and YULUISA
NIEVES,**

                **Defendants.**

_____/

**ORDER**

THIS CAUSE is before the Court on the Receiver's, Robb Evans & Associates LLC,

Amended Motion for Approval and Payment of Fees and Expenses of Receiver and Its

Professionals (the "Amended Motion for Receiver's Fees") filed on August 12, 2014. (Doc. 91).

United States Magistrate Judge David A. Baker submitted a Report and Recommendation

("R&R") on September 16, 2014, recommending that this Court grant in part and deny in part the

Amended Motion for Receiver's Fees. (Doc. 95, at 3, 13). On September 30, 2014, the Receiver

filed its Objection to the Report and Recommendation (the "Objections"). (Doc. 96). For the

reasons set forth below, the Court will modify the disposition recommended by the R&R. In doing so, the Amended Motion for Receiver's Fees will be granted in part and denied in part.

## I.   BACKGROUND

On January 6, 2014, Plaintiffs, the Federal Trade Commission (the "FTC") and the State of Florida, filed the initial Complaint (Doc. 1)[1] in this action, which alleged violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201–.213 and the Federal Trade Commission Act, 15 U.S.C. §§ 41–58, as well as violations of the FTC's Telemarketing Sales Rule, 16 C.F.R. Part 310. Specifically, Plaintiffs alleged that Defendants were engaged in an unlawful telemarketing scheme. (Compl. at 8–12). Pursuant to the alleged scheme, Defendants would falsely "inform consumers that a medical alert system ha[d] been purchased for them." (*Id.* at 9). Through additional misrepresentations, Defendants sought consumers' credit card or bank account information under the guise that, while the medical alert system had previously been paid for, consumers would be required to pay a monthly monitoring fee. (*Id.* at 10).

### A.   The Receivership

On January 7, 2014, the Court entered an Ex Parte Temporary Restraining Order ("TRO"), which temporarily appointed Robb Evans and Robb Evans & Associates LLC, as Receiver for several Defendants: Worldwide Info Services, Inc.; Elite Information Solutions Inc.; Absolute Solutions Group Inc.; Global Interactive Technologies, Inc.; Global Service Providers, Inc.; Arcagen, Inc.; American Innovative Concepts, Inc.; and Unique Information Services Inc. (collectively, the "Receivership Defendants"). (TRO, Doc. 24, at 7). Pursuant to the TRO, the Receiver's duties included, among other things, "[t]ak[ing] exclusive custody, control, and

---

[1] On February 25, 2014, Plaintiffs filed the First Amended Complaint (Doc. 53), which, among other things, added two Defendants.

possession of all assets and documents of, or in the possession, custody, or under the control of, the Receivership Defendants." (*Id.* at 18). In consideration, "the Receiver and all personnel hired by the Receiver" were to receive reasonable compensation. (*Id.* at 28). In that vein, the TRO ordered the Receiver to "file with the Court and serve on the parties periodic requests for payment," the first of which was due in the beginning of March 2014. (*Id.*)

To execute the TRO and establish the Receivership, the Receiver engaged fifteen of its own professionals, eleven of which traveled to Orlando, Florida on January 8, 2014, which is where the Receivership Defendants' business premises were located. (Report & Fund Balance, Doc. 96-7, at 2; Summ. of Travel Expenses, 96-6, at 2).[2] The Receiver also hired two professionals from Hays Financial Consulting, LLC ("Hays Consulting"), who traveled to Orlando. (*See* Hays Consulting Expense Report, Doc. 96-3, at 4).

On January 9, 2014, the Receiver entered the Receivership Defendants' business premises and "took possession and control of the records, documents and property located there." (Objections at 9). Among other things, the Receiver also interviewed employees, served the "TRO on all known financial institutions," disabled three computer servers, changed locks, redirected mail, and reviewed recorded sales calls. (*Id.* at 9–11). The Receiver identified several creditors, which are collectively owed $58,401.77. (*Id.* at 16). On January 10, 2014, three of the Receiver's professionals left Orlando, as well as the two professionals from Hays Consulting. (*Id.* at 23–24). Thereafter, "[a]ll other professionals, except the IT specialists[,] were released at the end of the second day." (*Id.*).

---

[2] Where the original document does not contain page numbers, pinpoint citations refer to the electronic page numbers.

On January 24, 2014, the Court entered the Stipulated Preliminary Injunction (the "Preliminary Injunction"), which permanently appointed Robb Evans & Associates LLC as Receiver. (Prelim. Inj., Doc. 35, at 17). The Preliminary Injunction set forth the same duties as the TRO and also required that the Receiver file and serve periodic requests for payment, the first of which was due toward the end of March 2014. (*Id.* at 17–22, 28). Most recently, this Court entered the November 13, 2014 Order and Permanent Injunction (the "Permanent Injunction") (Doc. 102), which permanently enjoins particular Receivership Defendants from engaging in activities related to the telemarketing scheme, and further directs that monetary judgments be entered against certain Receivership Defendants.

### B.       The Receiver's Requests For Compensation

The Receiver filed its Motion for Approval and Payment of Fees and Expenses ("Initial Motion for Receiver's Fees") (Doc. 73) on April 17, 2014, which is after the deadlines set forth in the TRO and Preliminary Injunction. Therein, the Receiver sought $195,336.03 in fees and expenses incurred from the inception of the Receivership through February 28, 2014. (*Id.* at 2). On April 24, 2014, Magistrate Judge Baker entered an Order, which denied without prejudice the Initial Motion for Receiver's Fees. (Doc. 76, at 1, 5). Specifically, Judge Baker held that "[t]he Receiver fails to fully advise the Court as to what has been collected to date, what other claims and assets remain to be pursued, how many claimants and other creditors are involved, and the amounts of such liabilities." (*Id.* at 4). As a result, "the Court ha[d] no basis to evaluate the reasonableness of the fees and costs sought." (*Id.*).

On August 12, 2014, the Receiver filed its Amended Motion for Receiver's Fees, requesting $213,118.34 in fees and expenses incurred from the inception of the Receivership

through June 30, 2014. (Am. Mot. Receiver Fees at 2). That calculation includes $132,131.20 in

in Receiver's fees, $65,021.22 in expenses, and $15,965.92 in legal fees and costs. (*Id.*).

On September 16, 2014, Magistrate Judge Baker submitted the R&R, which recommends

that the Amended Motion for Receiver Fees be granted in part and denied in part. According to

the R&R, "the Receiver and his professionals expended a great deal of time and energy to secure

a relatively limited result," and the number of staff employed by the Receiver was inappropriate

in light of the size of the estate. (R&R at 8–9). Therefore, among other things, Judge Baker

recommends that certain fees and expenses be reduced or denied as follows: (1) 25% reduction in

Receiver Staff fees; (2) 25% reduction in Accounting Staff fees; (3) 20% reduction in IT

Management Staff fees; (4) denial of copying costs; (5) denial of Hays Consulting fees and

expenses; and (6) limit travel expenses to $20,000. (*Id.* at 12–13).

On September 30, 2014, the Receiver objected to several of the R&R's recommendations.

The Receiver specifically objects to the limitations noted above. In addition, the Receiver generally

objects to the R&R's assessment of the result obtained by the Receiver and the finding that the

Receivership was overstaffed. Along with its Objections, the Receiver attached a number of

documents, which were not attached to the Amended Motion for Receiver's Fees, including: (1)

the September 29, 2014 Declaration of Brick Kane (Doc. 96-1); (2) a Hays Consulting expense

report (Doc. 96-3); (3) a Wells Fargo Bank, N.A. ("Wells Fargo") invoice for copying charges

(Doc. 96-4); (4) receipts and credit card statements related to travel expenses (Doc. 96-5); and (5)

summaries of travel expenses (Doc. 96-6).

## II.   STANDARD OF REVIEW

Upon timely objection, a magistrate judge's order on a nondispositive pretrial matter is

reviewed under a "clearly erroneous or contrary to law" standard of review, 28

U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a), while a magistrate judge's recommendation on a dispositive pretrial matter is reviewed under a *de novo* standard, 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(3). Even where *de novo* review is not required, "the district court may undertake 'further review . . . , *sua sponte* or at the request of a party, under a *de novo* or any other standard.'" *Stephens v. Tolbert*, 471 F.3d 1173, 1176 (11th Cir. 2006) (quoting *Thomas v. Arn*, 474 U.S. 140, 154 (1985)). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

As an initial matter, it is unclear whether the present motion is a nondispositive pretrial matter, subject to the "clearly erroneous or contrary to law" standard, or whether it is a dispositive pretrial matter, subject to *de novo* review. *Compare Johnson v. Old World Craftsmen, Ltd.*, 638 F. Supp. 289, 291 (N.D. Ill. 1986) (holding that a motion for attorneys' fees addresses a nondispositive matter and may be considered by the magistrate judge, subject to the "clearly erroneous or contrary to law" standard of review), *with West v. Redman*, 530 F. Supp. 546, 547–48 (D. Del. 1982) (holding that a request for attorneys' fees addresses a dispositive matter, and therefore, a magistrate judge's recommendation regarding attorneys' fees must be reviewed *de novo*). Regardless, this Court will exercise its discretion and will review *de novo* the portions of the R&R to which the Receiver objects. Additionally, this Court will consider the new evidence submitted by the Receiver after issuance of the R&R.

## III.   DISCUSSION

The Receiver objects to the R&R on several grounds. Four objections pertain to specific calculations. Particularly, the Receiver objects to the recommended: (1) reduction in Receiver's fees; (2) reduction in travel expenses; (3) denial of Hays Consulting fees and expenses; and (4)

denial of copying costs. The Receiver also makes two other objections that pertain generally to the assessment of the result obtained by the Receiver and the appropriate level of staffing.

"The receiver is an officer of the court[] and subject to its directions and orders." *Stuart v. Boulware*, 133 U.S. 78, 81 (1890). For the execution of its duties, a receiver is entitled to reasonable compensation, which "is usually determined according to the circumstances of the particular case, and corresponds with the degree of responsibility and business ability required in the management of the affairs intrusted to him, and the perplexity and difficulty involved in that management." *Id.* at 82. Stated differently, courts look to several factors in determining reasonableness: (1) the results achieved by the receiver; (2) the ability, reputation and other professional qualities of the receiver; (3) the size of the estate and its ability to afford the expenses and fees; and (4) the time required to conclude the receivership. *Sec. & Exch. Comm'n v. W.L. Moody & Co.*, 374 F. Supp. 465, 480–84 (S.D. Tex. 1974). "Whether a receiver merits a fee is based on the circumstances surrounding the receivership, and 'results are always relevant.'" *Sec. & Exch. Comm'n v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992) (quoting *W.L. Moody & Co.*, 374 F. Supp. at 480).

In addition to fees, the receiver is "also entitled to be reimbursed for the actual and necessary expenses" that the receiver "incurred in the performance of [its] duties." *Fed. Trade Comm'n v. Direct Benefits Grp., LLC*, No. 6:11-cv-1186-Orl-28TBS, 2013 WL 6408379, at *3 (M.D. Fla. Dec. 6, 2013). A receiver must support a claim for expenses with "sufficient information for the Court to determine that the expenses are actual and necessary costs of preserving the estate." *Sec. & Exch. Comm'n v. Kirkland*, No. 6:06-cv-183-Orl-28KRS, 2007 WL 470417, at *2 (M.D. Fla. Feb. 13, 2007) (citing *In re Se. Banking Corp.*, 314 B.R. 250, 271 (Bankr. S.D. Fla. 2004)).

A.      **Objection To The Reduction In Receiver's Fees**

Three of the Receiver's objections relate to the reasonableness of the fees requested by the Receiver. As a result, the Court will jointly address the objections to the R&R's reduction in requested Receiver's fees, the assessment of the result obtained by the Receiver, and the determination regarding the appropriate level of staffing for the Receivership. In doing so, the Court will also consider the September 29, 2014 Declaration of Brick Kane (Doc. 96-1), which was not previously made available for review prior to issuance of the R&R.

1.      *Receiver's fees sought*

The Receiver requests $132,131.20 in total Receiver's fees. That calculation includes fees for three different classes of professionals that participated in the Receivership, including: (1) Receiver Staff, (2) Accounting Staff, and (3) IT Management Staff. The Receiver requests $49,812.30 in fees for Receiver Staff. There were six professionals on the Receiver Staff that participated in the Receivership. (Report & Fund Balance at 2). Their billable rates ranged from $301.50 to $382.50 per hour,[3] and they initially billed a total of 217 hours from the beginning of the Receivership to June 30, 2014. (*See* Invoices, Doc. 96-2).[4] Notably, the Receiver, on its own volition, discounted fees related to the Receiver Staff's travel time by fifty-two hours so that, after the discount, the Receiver Staff billed a total of 165 hours. (*See* Credit Memos, Doc. 96-2).[5] The R&R recommends that the fees for the Receiver's Staff be reduced by 25%.

---

[3] In determining the reasonableness of professional fees, courts typically undertake a lodestar approach, which focuses on the reasonableness of the hourly rate and the reasonableness of the hours billed. *See Direct Benefits Grp., LLC*, 2013 WL 6408379, at *4. However, the Receiver has not submitted any evidence regarding the reasonableness of the hourly rates. Thus, this Court will focus on the overall reasonableness of the Receiver's requests.

[4] The Invoices are located in Docket Entry 96-2 at electronic page numbers 1, 35, 60, 75, 86, 97.

[5] The Credit Memos are located in Docket Entry 96-2 at electronic page numbers 2, 36.

The Receiver requests $56,348.95 in fees for the Accounting Staff. There were seven professionals on the Accounting Staff, as well as certain unnamed "Supporting Staff," that participated in the Receivership. (Report & Fund Balance at 2). The Accounting Staff professionals' billable rates ranged from $55.00 to $301.50 per hour, and they initially billed a total of 378.6 hours from the beginning of the Receivership to June 30, 2014. (*See* Invoices). Also, of the Accounting Staff fees, $2,730.00 was for work performed by the Supporting Staff. (Report & Fund Balance at 2). Here, as with the Receiver Staff, the Receiver voluntarily discounted the Accounting Staff's travel time by 71.4 hours so that, after the discount, the Accounting Staff billed a total of 307.2 hours. (*See* Credit Memos). The R&R also recommends that the fees for the Accounting Staff be reduced by 25%.

The Receiver requests $25,969.95 in fees for the IT Management Staff. There were two professionals on the IT Management Staff. (Report & Fund Balance at 2). Their billable rates were $135.00 per hour, and they initially billed a total of 215.75 hours from the beginning of the Receivership to June 30, 2014. (*See* Invoices). Again, the Receiver discounted the IT Management Staff's travel time by 23.38 hours so that, after the discount, the IT Management Staff billed a total of 192.37 hours. (*See* Credit Memos). The R&R recommends that the fees for the IT Management Staff be reduced by 20%.

### 2.   *Reasonableness of the fees sought*

As noted, a receiver is entitled to reasonable compensation, and reasonableness is guided by four factors. The first factor focuses on the result obtained by the receiver. Here, the Receiver specifically objects to the R&R's evaluation of the result obtained in this case. To date, the Receiver has recovered $207,629.22 from various bank accounts held by the Receivership Defendants, as well as the partial recovery of a retainer paid to the Receivership Defendants'

former counsel. In obtaining this result, the Receiver expended an extraordinary amount of effort, including sending thirteen professionals to Orlando to take over the Receivership Defendants' business premises. Additional evidence submitted by the Receiver indicates that the monetary amount recovered was unexpectedly low because consumer payments bypassed the Receivership Defendants and went directly to LifeWatch USA, the provider of the medical alert systems. (Brick Kane Sept. 29, 2014 Decl. at 8). Regardless, that fact does not mitigate the insignificance of the dollar amount recovered, especially when compared to the alleged consumer harm, which was determined to be $22,989,609.00 for purposes of the Permanent Injunction. (Permanent Inj. at 6, 9). Furthermore, the Receivership estate was derived almost entirely from bank accounts, which would have required minimal effort to obtain. Thus, the dollar amount of the result is insignificant.

In contrast, the Receiver's actions resulted in the avoidance of significant future harm to consumers. Prior to the Receiver's intervention, the Receivership Defendants directed an unlawful telephone solicitation scheme whereby they made various misrepresentations to consumers in an effort to induce the consumers to purchase, or pay fees for, a certain medical alert system. That scheme affected scores of consumers. The Receiver, by terminating call centers and disabling computer servers, caused the immediate cessation of that scheme. Had the Receiver not successfully acquired control of the Receivership Defendants' business premises, neither the Preliminary Injunction nor the Permanent Injunction, both of which were stipulated to, would likely have been as readily forthcoming. Thus, while the dollar amount of the recovery is relatively unimpressive, the future harm avoided is significant.

The second factor focuses on the ability, reputation, and professional qualities of the Receiver. According to the Receiver, it "has been appointed as Receiver or Trustee in over [eighty] regulatory matters during the last [twenty] plus years." (Brick Kane Sept. 29, 2014 Decl. at 5).

Additionally, "[t]he Receiver is repeatedly nominated by various state and federal agencies because this depth and breadth of experience does, in fact, minimize duplication of effort by its professionals." (*Id.* at 5–6). The R&R also "acknowledges the experience and professional qualifications of the Receiver, his firm and the attorneys retained." (R&R at 9). Thus, according to the record, the Receiver's ability, reputation, and professional qualities are noteworthy.

The third factor focuses on the size of the estate and its ability to afford the expenses and fees. As noted, the Receiver recovered $207,629.22, and the Receiver seeks $132,131.20 in fees, which is approximately 64% of the estate. When those fees are added to the requested expenses, which amount to $65,021.22, and legal fees and costs, which amount to $15,965.92, the Receiver's total requests equal $213,118.34, which exceeds the entirety of the estate. Thus, common sense indicates that the amount of fees requested is excessive.

The magnitude of the fees stems from the manner in which the Receiver executed the TRO. Specifically, the Receiver initially engaged seventeen professionals, thirteen of which traveled to Orlando upon commencement of the Receivership. Thereafter, according to the Receiver, five professionals left Orlando after the first day, and the remainder, except for the IT Management Staff, departed Orlando after the second day. Several of the professionals continued to work on the Receivership remotely. After accounting for the Receiver's discount for travel time, those professionals billed 664.57 hours through June 30, 2014. Indeed, most of the fees pertain to the first couple days of the Receivership, and a significant portion of those hours are for travel time.

The Receiver objects to the R&R and argues that the level of staffing was appropriate based on the duties outlined in the Preliminary Injunction, which was initially drafted by Plaintiffs, and based on initial information received from Plaintiffs. Implicit in the Receiver's argument is the admission that, had the Receiver been more informed, the Receiver would not have sent as many

professionals to Orlando. Particularly, the Receiver's own actions, in sending several professionals home immediately after commencing the Receivership, indicate that the Receivership was initially overstaffed. The Receiver is, at least, partly to blame for not properly investigating the Receivership Defendants prior to sending thirteen professionals, many of whom traveled from California, to Orlando. Regardless of where the blame lies, that mistake should not be charged to the estate.

The Receiver did voluntarily reduce billable hours to account for excessive travel time. Even after that reduction, however, the size of the estate does not justify the fees requested. *See Sec. & Exch. Comm'n v. Aquacell Batteries, Inc.*, No. 6:07-cv-608-Orl-22DAB, 2008 WL 276026, at *3 (M.D. Fla. Jan. 31, 2008) ("The [r]eceiver and all professionals must exercise proper billing judgment in seeking fees from the receivership estate, and should limit their work to that which is reasonable and necessary.").

The fourth factor focuses on the time required to conclude the Receivership. As noted, most of the work on the Receivership was completed within the first couple days. As evidence, 80% of the total requested Receiver's fees were incurred within the first month. While the Receiver still has pending obligations pursuant to the Permanent Injunction (*see* Permanent Inj. at 13), the bulk of the work was completed relatively quickly.

### 3. *Appropriate award of Receiver's fees*

In light of the above and based on new evidence submitted by the Receiver, this Court will modify the R&R's recommendation regarding Receiver's fees. The first, third, and fourth factors require that the requested Receiver's fees be reduced. Specifically, based on the third factor, the estate cannot withstand the requested fees. The record indicates that it was unnecessary for at least three of the Receiver's professionals to travel to Orlando at the commencement of the

Receivership. Thus, the fees pertaining to Srinivasa Krishnan, Coleen Callahan, and Jacklin Dadbin for work performed between January 8, 2014, and January 10, 2014, will be denied. To the extent that the record indicates that those individuals performed work during that time period (*see* Doc. 96-2, at 4, 11, 20), the record is insufficiently vague to justify awarding those fees.

Additionally, the first factor indicates that, while the Receiver has prevented future harm to consumers, the financial result achieved was insignificant. Similarly, the fourth factor indicates that the time required to complete the Receivership was minimal. Thus, this Court will reduce each category of Receiver's fees (Receiver Staff, Accounting Staff, and IT Management Staff) by 5%. In doing so, the Court remains cognizant of the Receiver's voluntary reduction in the fees associated with travel time.

In sum, the Court will award $112,437.35 in Receiver's fees, which includes the following specific adjustments to the Receiver's request:

1. Reduce Receiver Staff fees by $5,547.60 because the record indicates that it was unnecessary for Srinivasa Krishnan to travel to Orlando on January 8, 2014.[6]

2. Reduce Accounting Staff fees by $5,498.50 because the record indicates that it was unnecessary for Coleen Callahan and Jacklin Dadbin to travel to Orlando on January 8, 2014.[7]

3. Further reduce Accounting Staff fees by $2,730.00 because the Receiver failed to explain why the Supporting Staff billed hourly for their services.

---

[6] Between January 8, 2014, and January 10, 2014, Mr. Krishnan billed 28.8 hours (reduced to 18.4) at $301.50 per hour.

[7] Between January 8, 2014, and January 10, 2014, Ms. Callahan billed 31.4 hours (reduced to 19.5) at $225.00 per hour, and Ms. Dadbin billed 32.8 hours (reduced to 20.2) at $55.00 per hour.

4. Further reduce each category of Receiver's fees (Receiver Staff, Accounting Staff, and IT Management Staff) by 5% based on the limited monetary result and the inability of the estate to afford the requested fees and expenses.

**B.    Objection To The Reduction In Travel Expenses**

The Receiver objects to the R&R's recommended reduction of travel expenses. In conjunction with its Objections, the Receiver attached numerous reimbursement claim forms, as well as receipts, which document the travel expenses. (*See generally* Doc. 96-4). In all, the Receiver requests $52,237.39 for reimbursement of travel expenses. Of those expenses, the Receiver incurred $42,405.13 within the first month of the Receivership. (Report & Fund Balance at 3). A significant majority of those expenses represents the airfare costs of the professionals that traveled to Orlando on January 8, 2014. Specifically, between January 8, 2014, and January 13, 2014, the Receiver's professionals incurred $38,988.99 in airfare costs. (Summ. of Travel Expenses at 2). Several of those professionals each spent $3,686.00 on a one-way flight, (Brick Kane Reimbursement Claim, Doc. 96-5, at 1), and $5,046.00 on the round trip, (Summ. of Travel Expenses at 2).

As an excuse for the exorbitant airfare, the Receiver cites "a major [e]ast [c]oast storm and the college BCS championship game," which was held in Pasadena, California on January 6, 2014. (Objections at 19). Additionally, the Receiver states that "[w]hen the Receiver learned the Court did not issue the Order on the date anticipated by the FTC, it had to re-book all flights at far more expensive rates." (*Id.*). As to the latter excuse, the record indicates that the Court entered the TRO on January 7, 2014, the day after the Complaint and the Ex Parte Motion for a TRO (Doc. 5) were filed. Plaintiffs were at liberty to initiate this case on a date of their choosing, and the Receiver's

failure to coordinate with Plaintiffs does not justify the excessive airfare costs.[8] As to the former excuse, the airfare costs paid by the Receiver far exceed the bounds of reasonableness. Thus, the passing references to inclement weather and a football game, without more, are insufficient to justify the requested airfare costs.

In contrast to the Receiver's request for fees, the request for travel expenses seeks compensation for out-of-pocket expenses, which have presumably already been paid by the Receiver. While that fact might favor reimbursement, the Receiver's willingness to pay such inordinate airfare costs defies common sense. Interestingly, the Receiver, while providing copies of credit card statements, has failed to provide copies of the airline tickets. Since that type of information should be relatively easy to obtain, the omission tends to demonstrate that the Receiver seeks to diminish the fact that many more than "some" of the professionals traveled first class. (*See* Brick Kane Sept. 29, 2014 Decl. at 7, n.2 (offering an explanation as to why some, if not all, of the professionals traveled first class)). Despite the Receiver's arguments to the contrary, first class travel, at least in this case, is beyond the bounds of what constitutes actual and necessary expenses. *See W.L. Moody & Co.*, 374 F. Supp. at 348 ("No receivership is intended to generously reward court-appointed officers.").

In light of the above and based on new evidence submitted by the Receiver, this Court will modify the R&R's recommendation regarding travel expenses. First, the amount of airfare to be reimbursed will be limited. In determining a reasonable price for roundtrip airfare, the Court will reduce airfare costs by half. Even at a 50% reduction, some of the airfare costs remain excessive.

---

[8] To the extent that the Receiver suggests that the Court should have entered the TRO on the same day that the Ex Parte Motion for a TRO was filed, the Receiver should temper those concerns with the knowledge that this Court will thoroughly review any filed motion, even at the risk of interfering with a litigant's pursuit of instant gratification.

Second, as noted above, the record indicates that it was unnecessary for three of the Receiver's professionals to travel to Orlando on January 8, 2014; therefore, the expenses associated with those three professionals will not be reimbursed.

In sum, the Court will award $23,174.76 in travel expenses, which includes the following specific adjustments to the Receiver's request:

1. Reduce travel expenses by $13,397.13 because the record indicates that it was unnecessary for Srinivasa Krishnan,[9] Coleen Callahan,[10] and Jacklin Dadbin[11] to travel to Orlando on January 8, 2014.

2. Further reduce travel expenses by $15,665.50 because the Receiver failed to secure reasonably-priced airfare. That amount represents a 50% reduction in the airfare costs incurred by the Receiver's professionals.

### C.    Objection To The Denial Of Hays Consulting Fees

The Receiver objects to the R&R's denial of expenses related to the employment of Hays Consulting. In conjunction with its Objections, the Receiver attached expense reports (Doc. 96-3), which were not previously made available for review upon submission of the R&R. The Receiver requests $10,701.72 for reimbursement of fees and expenses paid to Hays Consulting. That calculation includes the fees and expenses incurred by two Hays Consulting professionals, S. Gregory Hays and Wes Scott, who participated in the Receivership. (*Id.* at 1). Mr. Hays and Mr. Scott are based in Atlanta, Georgia and traveled to Orlando on January 8, 2014, to participate in

---

[9] Mr. Krishnan incurred $3,591.99 in airfare, $173.14 in hotel, $30.80 in mileage, and $144.87 in shuttle/taxi expenses. (Summ. of Travel Expenses at 3).

[10] Ms. Callahan incurred $4,518.00 in airfare, $173.14 in hotel, and $74.05 in parking expenses. (*Id.*).

[11] In January, Ms. Dadbin incurred $4,518.00 in airfare and $173.14 in hotel in expenses. (*Id.* at 1–2).

the Receivership. (*Id.* at 4). Both worked on site from January 9, 2014, through January 10, 2014, and performed a number of tasks, including: coordinating with the Receiver, reviewing documents, analyzing call scripts, interviewing the Receivership Defendants' employees, and researching accounting records. (*Id.* at 3–4).

Mr. Hays billed 13.2 hours at $301.50 per hour and six hours at $150.75 per hour, for a total of 19.2 hours at an average of $254.39 per hour. (*Id.* at 3–4).[12] Mr. Scott billed 13.1 hours at $250.00 per hour and six hours at $125.00 per hour, for a total of 19.1 hours at an average of $210.73 per hour. (*Id.*). Mr. Hays and Mr. Scott also incurred $1,792.42 in expenses, which includes $1,586.00 in airfare costs. (*Id.* at 5). Specifically, Mr. Scott spent $808.00 in airfare while traveling from Atlanta to Orlando, while Mr. Hays spent $778.00. (*Id.*).

In light of the above and based on new evidence submitted by the Receiver, this Court will modify the R&R's recommendation regarding Hays Consulting expenses. Accordingly, the Receiver will be reimbursed for expenses related to Hays Consulting, subject to certain deductions. First, the airfare costs, while not quite as exorbitant as the airfare incurred by the Receiver's professionals, are excessive considering the relatively short distance traveled. Thus, airfare will be reduced by 25%. Second, this Court will limit the fees paid to Mr. Hays and Mr. Scott by 5% based on the limited monetary result achieved and the inability of the estate to afford the requested fees and expenses, which is the same rationale under which the Receiver's fees were limited.

In sum, the Court will award $9,789.96 in Hays Consulting expenses, which includes the following specific adjustments to the Receiver's request:

---

[12] As noted in footnote 3, a lodestar approach is typically used in determining reasonableness of professional fees. Here, as with the Receiver's fees, the Receiver has not submitted evidence regarding the reasonableness of the Hays Consulting professionals' hourly rate, and therefore, this Court will focus on the overall reasonableness of the fees.

1. Reduce Hays Consulting expenses by $396.50 because Mr. Hays and Mr. Scott failed to secure reasonably-priced airfare. That amount represents a 25% reduction in the airfare costs.

2. Further reduce Hays Consulting fees by 5% based on the limited financial result and the inability of the estate to afford the requested fees and expenses.

## D.   Objection To The Denial Of Copying Costs

The Receiver objects to the R&R's denial of copying costs.[13] The Receiver requests $302.28 for reimbursement of copying costs. In conjunction with its Objections, the Receiver attached an invoice from Wells Fargo, (Doc. 96-4, at 1), as well as communications between the Receiver and Wells Fargo, (*id.* at 2–6). The communications indicate that the Receiver served Wells Fargo with a subpoena, whereby the Receiver sought bank account information related to the Receivership.[14] The invoice indicates that Wells Fargo charged the Receiver for $302.28 for copying costs associated with producing that information. Thus, the Receiver has provided sufficient records that indicate the origin of the copying costs, as well as establish the reasonableness of such costs. In light of that new evidence, the Court will award the Receiver $302.28 in copying costs and will modify the R&R accordingly.

## E.   Summary Of Amounts Awarded

---

[13] The Receiver also seems to object to the denial of legal costs associated with work performed by a paralegal. The Receiver fails to support its objection with any argument and merely references previously-filed evidence. Such an objection does not warrant review. *See Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989) (holding that objections to a magistrate judge's recommendation must "specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection").

[14] It is of some concern that the invoice references a different case name—FTC v. Matthew P Eggen. However, the reference number on the invoice matches the reference number on the communications, which refer to the same accounts that are discussed in the subpoena.

Pursuant to the above, the Receiver will be awarded $163,858.79 in accordance with the following:

| RECEIVER'S FEES | | |
|---|---|---|
| **Description** | **Amount Requested** | **Amount Awarded** |
| Receiver Staff fees | $49,812.30 | $42,051.47 (amount requested less $5,547.60; then, less 5%) |
| Accounting Staff fees | $56,348.95 | $45,714.43 (amount requested less $5,498.50; less $2,730.00; then, less 5%) |
| IT Management Staff fees | $25,969.95 | $24,671.45 (amount requested less 5%) |
| TOTAL RECEIVER'S FEES | | $112,437.35 |

| RECEIVER'S EXPENSES | | |
|---|---|---|
| **Description** | **Amount Requested** | **Amount Awarded** |
| Business expenses (security/alarm, moving/storage/box records) | $1,316.49[15] | $1,316.49 (per recommendation of R&R) |
| Asset/credit searches | $252.00 | $252.00 (per recommendation of R&R) |
| Copying | $302.28 | $302.28 |
| Hardware/software | $98.55 | None (per recommendation of R&R) |
| Hays Financial Consulting, LLC | $10,701.72 | $9,789.96 (amount requested less $396.50; then, less 5%) |
| IT service | $330.00 | $330.00 (per recommendation of R&R) |
| Postage/delivery | $654.38 | $654.38 (per recommendation of R&R) |
| Supplies/telephone | $254.15 | None (per recommendation of R&R) |
| Travel expense | $52,237.39 | $23,174.76 (amount requested less $13,397.13; less $15,665.50) |

---

[15] Reimbursement for this expense was not requested in the Amended Motion for Receiver's Fees. (*Compare* Am. Mot. Receiver's Fees at 2, *with* Report & Fund Balance at 2–3). However, in accordance with the R&R, this expense merits reimbursement.

| Website maintenance | $190.75 | $190.75<br>(per recommendation of R&R) |
| TOTAL RECEIVER'S EXPENSES | | $36,010.62 |

| LEGAL FEES AND COSTS | | |
| --- | --- | --- |
| Description | Amount Requested | Amount Awarded |
| Legal Fees | $15,385.95 | $15,102.45<br>(per recommendation of R&R) |
| Legal Costs | $579.97 | $308.37<br>(per recommendation of R&R) |
| TOTAL LEGAL FEES AND COSTS | | $15,410.82 |

| TOTAL | $163,858.79 |
| --- | --- |

## IV.   CONCLUSION

Therefore, it is **ORDERED** and **ADJUDGED** as follows:

1. The R&R (Doc. 95) filed on September 16, 2014, is **ADOPTED** and **CONFIRMED**, as modified by this Order.

2. The Amended Motion for Receiver's Fees (Doc. 91) filed on August 12, 2014, is **GRANTED in part** and **DENIED in part**.

3. The Receiver is authorized to disburse $163,858.79 in accordance with the amounts set forth in Subsection III.E of this Order.

**DONE** and **ORDERED** in Orlando, Florida on January 9, 2015.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties