# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**FEDERAL TRADE COMMISSION**
**and**
**STATE OF FLORIDA, OFFICE OF THE**
**ATTORNEY GENERAL, DEPARTMENT**
**OF LEGAL AFFAIRS,**

**Plaintiffs,**

**-vs-**                                              **Case No.  6:14-cv-8-Orl-41DAB**

**WORLDWIDE INFO SERVICES, INC., a**
**Florida corporation, also d/b/a THE**
**CREDIT VOICE;**

**ELITE INFORMATION SOLUTIONS**
**INC., a Florida corporation, also d/b/a THE**
**CREDIT VOICE;**

**ABSOLUTE SOLUTIONS GROUP INC., a**
**Florida corporation, also d/b/a THE**
**CREDIT VOICE;**

**GLOBAL INTERACTIVE**
**TECHNOLOGIES, INC., a Florida**
**corporation, also d/b/a THE CREDIT**
**VOICE INC.;**

**GLOBAL SERVICE PROVIDERS, INC., a**
**Florida corporation;**

**THE CREDIT VOICE, INC., a Florida**
**corporation, also d/b/a TCV;**

**LIVE AGENT RESPONSE 1 LLC, a**
**Florida limited liability company, also d/b/a**
**LAR;**

**ARCAGEN, INC., a Florida corporation,**
**also d/b/a ARI;**

**AMERICAN INNOVATIVE CONCEPTS,**
**INC., a Florida corporation;**

**UNIQUE INFORMATION SERVICES
INC., a Florida corporation;**

**MICHAEL HILGAR, individually and as an
officer or manager of Worldwide Info
Services, Inc., Elite Information Solutions
Inc., Absolute Solutions Group Inc., Global
Interactive Technologies, Inc., Global
Service Providers, Inc., The Credit Voice,
Inc., Live Agent Response 1 LLC, Arcagen,
Inc., and American Innovative Concepts,
Inc.;**

**GARY MARTIN, individually and as an
officer or manager of Global Interactive
Technologies, Inc., The Credit Voice, Live
Agent Response 1 LLC, Arcagen, Inc., and
American Innovative Concepts, Inc.; and**

**JOSEPH SETTECASE, individually and as
an officer or manager of Unique
Information Services Inc.,**

                                **Defendants.**
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

          This cause came on for consideration without oral argument on the following motion filed

herein:

| | |
|---|---|
| **MOTION:** | **FINAL MOTION FOR APPROVAL AND PAYMENT OF FEES AND EXPENSES OF RECEIVER AND ITS PROFESSIONALS INCURRED FROM JUNE 30, 2014 THROUGH CLOSING OF RECEIVERSHIP ESTATE AND FOR APPROVAL TO DISTRIBUTE PROCEEDS TO THE PLAINTIFFS (Doc. No. 115 )** |
| **FILED:** | **APRIL 13, 2015** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part
and **DENIED** in part.

Robb Evans & Associates LLC, the Receiver ("Receiver") of Worldwide Info Service, Inc., Elite Information Solutions, Inc., Absolute Solutions Group, Inc., Global Interactive Technologies, Inc., Global Service Providers, Inc., The Credit Voice, Inc., Live Agent Response 1LLC, Arcagen, Inc., American Innovative Concepts, Inc., and Unique Information Services, Inc., and their successors, assigns, subsidiaries and affiliates (the "Receivership Defendants"), moves for an order approving and authorizing payment from the assets of the receivership estate of the fees and expenses of the Receiver, its members and staff, and of the Receiver's counsel, Carlton Fields Jorden Burt, P.A. ("Carlton Fields"), for work performed "from July 1, 2014 through January 31, 2015," claiming as follows:

> Receiver, its members and staff have incurred fees from July 1, 2014 through closing in the aggregate sum of $11,240.15 and costs of $4,709.46. Carlton Fields Jordan Burt, P.A. has incurred fees of $18,926.16, for total Receiver's fees and costs and attorney's fees and costs of **$34,875.77** for the Subject Expense Period.

(Doc. 115, p. 2).

The motion claims that the Receiver has recovered a total of $231,629.09 to date, and references a "surplus" in the amount of $31,861.34, to be forwarded to the FTC upon the approval of the Court.  The Receiver fails to mention, however, that the Receiver and counsel have already been paid $163,858.79 from the estate (Doc. 108), leaving only $67,770.30 remaining.  Of this sum, the requested award of an additional $34,875.77 would result in the Receiver and counsel receiving $198,734.56 of the estate, or over 85% of the total amount recovered.[1]

Although the motion does not contain a Local Rule 3.01(g) certificate, the Certificate of Service indicates that counsel of record in this matter received notice of the request, and a copy of the motion was mailed to the known creditors.  To date, no opposition papers have been filed.

---

[1]The initial request for fees and expenses totaled $213,118.34, which, coupled with the $34,875.77 sought here, means that, over the course of this litigation, the Receiver and counsel have requested fees and expenses that exceed the entirety of the estate.

Nonetheless, upon review of the motion, the supporting Declarations and the applicable law, the Court cannot recommend that the motion be granted, as presented.  Instead, and for the reasons set forth herein, it is **respectfully recommended** that the motion be **granted, in part, and denied, in part, in that a reduced award be made.**

I. Background

The Court entered judgment against the Stipulating Receivership Defendants (Doc. 103) and against Receivership Defendant Live Agent Response I, LLC (Doc. 111).    In addition to the monetary judgment against the Stipulating Receivership Defendants, the Court entered a permanent injunction and order against the Stipulating Receivership Defendants (Doc. 102). As described by the Receiver in the motion:

> Pursuant to this Order, the Receivership was directed to complete the liquidation of the all assets of the Stipulating Receivership Defendants and upon approval of the Court, pay any remaining funds to the FTC and State of Florida. (Doc. 102 at p. 13). Specifically, Stipulating Receivership Defendant Hilgar was required to sell his BMW for fair market value. *Id.* at p. 7. Stipulating Receivership Defendant Martin was ordered to transfer possession of the 1984 Hans Christian 33T (hereinafter "Boat") to the Receiver, who was directed to liquidate the Boat. *Id.*, at pp. 7-8. Stipulating Receivership Defendant Settecase was ordered to transfer possession of 2004 Mercedes SL-500 (VIN WDBSK75F04F084055) and 2008 Lincoln Navigator (VIN SLMFU27528LJ21515) (hereinafter, "Settecase Vehicles") identified in the January 21, 2014 financial statement provided by Defendant Settecase to the FTC, to the Receiver. *Id.*, at pp. 8-9. The Receiver was directed to liquidate the Vehicles. *Id.*
>
> In its Order closing the case (Doc. 110), the Court ordered, *inter alia*, that the Receiver provide, by April 13, 2015, its status report which discusses any on-going or future obligations regarding the Receivership; or (2) a "final report and application for fees and expenses."

(Doc. 115).  The Report has been filed (Doc. 114) and the instant motion followed.

II.  Applicable Law

The Receiver is entitled to reasonable compensation and expenses, pursuant to the Order of appointment. The Court has traditionally determined reasonableness by utilizing the familiar lodestar approach, calculating a reasonable hourly rate in the relevant market and the reasonable number of

hours expended. *See, e.g., S.E.C. v. Aquacell Batteries, Inc.,* No. 6:07–cv–608–Orl–22DAB, 2008 WL 276026, *3 (M.D. Fla. Jan 31, 2008); *F.T.C. v. Peoples Credit First, LLC*, No. 8:03-cv-2353-T-17TBM, 2005 WL 3981599, at * 3 (M.D. Fla. April 19, 2006) *(citing Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)); *see also Norman v. Hous. Auth.*, 836 F.2d 1292, 1299-1302 (11th Cir. 1988). Similarly, requests for reimbursement of expenses must be supported by sufficient information for the Court to determine that the expenses are actual and were necessarily incurred. *See Peoples Credit First, LLC,* 2005 WL 3981599, at * 5; *see also In re Southeast Banking Corp.*, 314 B.R. 250, 271 (S.D. Fla. 2004).

In awarding attorney's fees, a Court must (1) determine the nature and extent of the services rendered; (2) determine the value of those services; and (3) consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). Part of "determining the nature and extent of the services rendered," however, includes an analysis as to the reasonableness of the services rendered, bearing in mind the nature of a receivership. As the Supreme Court has noted:

> The receiver is an officer of the court, and subject to its directions and orders . . . . [H]e is . . . permitted to obtain counsel for himself, and counsel fees are considered as within the just allowances that may be made by the court. . . . So far as the allowances to counsel are concerned, it is a mere question as to their reasonableness. . . . The compensation is usually determined according to the circumstances of the particular case, and corresponds with the degree of responsibility and business ability required in the management of the affairs intrusted to him, and the perplexity and difficulty involved in that management.

*Stuart v. Boulware*, 133 U.S. 78, 81-82 (1890).

The Receiver and all professionals must exercise proper billing judgment in seeking fees from the receivership estate, and should limit their work to that which is reasonable and necessary. *See, e.g., Peoples Credit First, LLC*, 2005 WL 3981599, at * 4. After all, "[n]o receivership is intended to generously reward court-appointed officers." *S.E.C. v. W. L. Moody & Co.*, 374 F.Supp. 465, 483 (S.D. Tex. 1974), *aff'd*, 519 F.2d 1087 (5th Cir. 1975)). This is particularly true when the receivership estate

-5-

will not recover sufficient assets to pay full restitution to the victims of the fraud or misconduct alleged in the complaint.

The factors in determining the reasonableness of a receivership fee may include (1) the results achieved by the Receiver; (2) the ability, reputation and professional qualities of the Receiver necessary for the job; (3) the size of the Estate and its ability to afford the expenses and fees; and (4) time required to conclude the receivership. *See Moody, supra*, 374 F.Supp. 465, 480-83. In the end, "Whether a receiver merits a fee is based on the circumstances surrounding the receivership, and 'results are always relevant.'" *S.E.C. v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992) (*quoting S.E.C. v. Moody*, *supra*).

III. Analysis

The Receiver claims, as claimed in the earlier fee motions, that there is no dispute as to any of the *W.L. Moody* factors. The Receiver states that it "undisputedly acted reasonably and diligently in performing the tasks for which it was appointed" and the Receiver, its members, staff and counsel rendered "extensive" services. While the Court does not question the diligence of the Receiver and its stable of billing professionals, the Court continues to question whether such extensive services were reasonably necessary here.

*The results achieved*

According to the papers, the activities of the Receiver during the Subject Expense Period are set forth in the Final Report and April 2015 Declaration of Brick Kane. In that Declaration (Doc. 115-1), Mr. Kane mentions tasks relating to disposition of the boat, the vehicles, computers and documents, and a final accounting. Kane notes that the boat was sold by the marina operator prior to entry of the Court's November 14, 2014 Order. As for the vehicles, the Receiver obtained offers from Carmax and proceeds totaling $24,000 for the Settecase Vehicles were remitted to the Receiver in December 2014. At the request of counsel for the Plaintiff, the Receiver has obtained a bid of $1,300

for preparing and packaging to ship documents and computers it has in storage to the Plaintiffs office in Chicago. The Receiver also claims time for preparation of a final accounting.

As for legal representation, the Declaration of David Canella (Doc. 115-2) declares that during the period covered by this application, which counsel extends to April 13, 2015, Carlton Fields reviewed and analyzed the orders of the Court, served third party discovery, assisted in the preparation of the Receiver's report, prepared the amended application of fees served in August 2014, prepared the September 30, 2014 Rule 72 objection to the Report and Recommendation granting in part and denying in part the Receiver's amended Motion for Approval of Payment of Fees and Expenses (Doc. 96) (for which counsel has agreed to discount his fees as a courtesy to the client and in recognition of the District Court's subsequent ruling on the Report); and personally negotiated with the Stipulating Receivership Defendants for the turnover to the Receiver of the assets subject to liquidation.   In addition, paralegal Renee Kemper assisted the Receiver in obtaining the transfer of documents and computers from to the FTC, at the request of the FTC.  For this work, counsel seeks $18,926.16 (attorney's fees billed at $445 and $481.50 an hour and paralegal time at $207 an hour).

The winding up of the Receivership here was not complex and the results achieved were mixed and minimal (the boat was not recovered; the cars sold for $24,000).  Viewed in the context of the final accounting, the Court finds the Receiver and his professionals expended a great deal of time and energy in this period to secure a particularly limited result.  Indeed, the total amount of fees sought well exceeds the assets recovered for this period.  This  factor does not support the award requested.

*The abilities and reputation of the Receiver and the time required to conclude the Estate*

As noted previously, the Court accepts the abilities and reputation of the Receiver and counsel. However, the overstaffing of this case (mentioned by the undersigned in earlier report and noted by the District Judge) continues to be unwarranted in view of the tasks at hand. According to the Receiver's declaration, the tasks performed during this time period were relatively mundane. The boat

was already sold.  Carmax took care of liquidating the vehicles. The final accounting is certainly not extensive (in view of the relatively few changes to the prior accounting due to activity in this time period) and obtaining a bid for sending items to Chicago cannot be all that labor intensive.  And yet, the motion seeks approval and payment of the Receiver's fees incurred during this period in the aggregate sum of $11,240.15. The Court finds this to be excessive.

While tasks such as preparation of the final accounting are recoverable, and a certain amount of professional time is appropriately spent on administrative matters incident to winding up a Receivership, the time sheets here show that the vast majority of tasks itemized are for purely clerical work.   The time sheets reveal charges for such chores as "handle incoming mail," "handle outgoing mail," filing mail, prepare outgoing FedEx, create folders, filing, "locate a box of files," and a great deal of clerical (but billed) time for "sorted and filed PO forwarded Acrogen mail."  The undersigned has previously noted the inappropriateness of "support staff" billing at as much as $45 per hour in this context.

Moreover, the Receiver does not persuade the Court that all of these professionals were needed and that no unnecessary duplication of services was performed. The time sheets reveal as many as 10 timekeepers on the Receiver's staff alone (not counting counsel), billing on this file. *See, e.g.*, invoice for August 2014. The tasks described by the Receiver simply did not warrant so many hands on deck.

As for counsel's fees, although the bills are redacted, it appears that the largest portion of counsel's fees of $18,926.16 were spent on matters relating to obtaining the fee award. While not *per se* inappropriate, this time, at very handsome rates, did not advance the interests of the Receivership estate.  In view of the other *Moody* factors, this weighs against full recovery of the fees sought.

*The ability of the estate to afford the fees*

In making its appointment, the Court charged the Receiver to "perform all acts necessary or advisable to preserve the value of [the] assets."  The Court does not see sufficient evidence of that in

this request.  Considering that the Receiver and its counsel previously claimed fees and costs that *exceeded the total assets of the estate*, there would be no "estate" left to pay the instant claim but for the reduction performed by the District Court.  That reduction recognized "the limited monetary result achieved and the inability of the estate to afford the requested fees and expenses" and included a finding that the services provided were excessive and certain expenses "exorbitant." (Doc. 108). Despite the clear indication that the limited result here required tighter management, the Court sees no evidence of fiscal discipline to suit the circumstances, in the instant request. This factor weighs in favor of denying the request.

In view of the size of the estate and all of the foregoing reasons, the Court concludes that the requested award is not warranted, and **respectfully recommends** that the motion be denied, as to the amount sought.

*An appropriate award*

While the Court does not find that an award in the requested amount is appropriate, it does recognize that the Receiver and counsel are entitled to be compensated to the extent reasonable services were necessarily performed.  Normally, the Court would review the billing sheets and perform a lodestar analysis.  The papers here, however, are not presented in sufficient fashion for such an analysis to be undertaken. The bills of both counsel and the Receiver are redacted.  While this is not necessarily inappropriate, it is odd in this context, as the Receiver is acting as an officer of the court and the matter is closed. With respect to the Receiver's billing, the remaining descriptions contain entries (such as "filing," "create folders," etc.) that are often too vague to evaluate. Too, the Receiver does not set forth the qualifications of the timekeepers sufficient for the Court to evaluate the claimed rates.  Considering the history of prior fee motions, this deficiency is particularly noteworthy. As such, the undersigned will follow Judge Mendoza's lead and focus on the overall reasonableness of the Receiver's requests (Doc. 108, fn. 3).

The Court has reviewed the fees and expenses claimed (summarized at Doc. 115-1) and has made approximate deductions for duplication, excessive staffing, and for unexplained, unreasonable or otherwise non-compensable services. *See, e.g., S.E.C. v. Kirkland,* No. 6:06–cv–183–Orl–28KRS, 2008 WL 4144424, *4 (M.D. Fla. Sept. 5, 2008) ("Work that is purely clerical in nature, such as contacting court reporters, and mailing, filing, and delivering documents is not compensable"). Considering this and all of the foregoing *Moody* factors, of the $11,240.15 in Receiver's fees claimed for this period, the Court recommends a reduction of $4,000, **for an award of $7,240.15.** As for items identified as "costs," as noted above, requests for reimbursement of expenses must be supported by sufficient information for the Court to determine that the expenses are actual and were necessarily incurred. *See Peoples Credit First, LLC,* 2005 WL 3981599, at * 5; *see also In re Southeast Banking Corp.*, 314 B.R. 250, 271 (S.D. Fla. 2004). The **$4,709.46** in costs, while high, are adequately explained (*see* Doc 115-1, pp. 38-40) and it is **recommended** that they be awarded.

As for legal fees and costs, as noted, the vast majority of counsel's work in this period was related to recovery of fees. Although counsel appears to recognize this by offering to reduce part of his time spent on objecting to the undersigned's prior recommendation on the earlier fee motion, the remaining amount is still in excess of that requested for all work performed by counsel prior to July 2014. Indeed, of the over 47 hours billed by counsel, only approximately 14.0 hours were spent by Mr. Canella in non-fee related matters during this time period.[2]  On this showing, the Court does not find that all of the hours spent seeking fees is reasonably charged to the estate.

In prior report, the undersigned found counsel's hourly rate to "be on the high side" and a paralegal rate of $189 per hour to be "outside that which is reasonable for paralegal services in this area." (Doc. 95). Here, the claimed rates are even higher. While the Court does not doubt that

[2]This is an approximation due to the redaction of certain billed entries. The Court notes that in addition to the 17.70 hours spent on the Rule 72 objection, counsel prepared the Amended Fee motion and the instant fee motion.

counsel's rate of $481.50 an hour may be acceptable in an appropriate case, considering the *Johnson* factors (including the nature of the work performed and the expertise required), this is not such a case. Moreover, the claimed paralegal rate of $207 an hour, for services consisting of preparing an estimate to ship certain items, is excessive, considering the non-legal nature of the task and rates normally charged in this area.

While the undersigned previously allowed almost all of counsel's billing based on a finding that the invoices showed billing judgment and the overall amount was within reason, the instant request does not reflect the same restraint. Upon review, no more than **$15,000** total, for counsel fees and expenses, is reasonable and properly charged to the estate.

In view of the foregoing, the Court finds the recommended total amount of **$26,949.61** ($7,240.15 Receiver fees plus $4,709.46 expenses plus $15,000 counsel fees and expenses) to be an appropriate amount for the reasonable and necessary tasks performed and expenses incurred, as established by the record the Receiver chose to present. It is therefore **respectfully recommended** that the motion be granted, in part and denied, in part, and that an award in the amount of **$26,949.61** be approved.

To the extent the motion also seeks approval to distribute remaining proceeds from the Receivership estate to the Plaintiffs, absent objection from any party, it is further **recommended** that this request be **approved.**

A party failing to file written objections to a magistrate judge's findings or recommendations within fourteen (14) days of issuance of the Report and Recommendation, waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.

**RECOMMENDED** in Orlando, Florida on June 10, 2015.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record